VEGETABLE FARMS, Inc. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 12687.

United States Court of Appeals
Ninth Circuit.

Sept. 4, 1951.

Leo T. McMahon, Geo. A. Cavalletto, T. Preston Webster, Jr., and Robert W. McIntyre, all of Santa Barbara, Cal., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, George D. Webster and Richard D. Harrison, Special Assts. to the Atty. Gen., for respondent.

Before STEPHENS and POPE, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

Tamura and Matsuno bought out the interest of the other partners in a business of growing vegetables, on October 31, 1940, and organized Vegetable Farms, Inc. Tamura managed the operations and devoted full time and Matsuno only part time. Tamura received a salary. After December 7, 1941, these Japanese began to have difficulty because of hostility toward them. Therefore Vegetable Farms bought a marketing plant. In the early part of 1942, these Japanese transferred all of their stock in the company, in trust, to three men of experience in vegetable growing. On April 28, 1942, both Japanese were placed in concentration camps. They then resigned as officers and directors, their places being taken by the trustees. Vegetable Farms entered into an agreement with California Lettuce Growers, Inc., which was owned and operated by the same individuals who were trustees for the two Japanese, to purchase all the growing crops of Vegetable Farms and certain of its equipment, with land leases, for the sum of $247,460.17. The agreement also provided for lease of various equipment for a five-year term at an annual rental of $22,500, with the option to purchase for the sum of $35,000 at the end of the period. Vegetable Farms paid Tamura and Matsuno salaries during the years 1941 to 1944, inclusive. In October, 1943, these Japanese each again became a director and an officer of Vegetable Farms. The Commissioner assessed deficiency against Vegetable Farms for the years 1941, 1942 and 1944. The Tax Court affirmed. There is assigned as error:

(1) That the Tax Court sustained disallowance of a portion of salary paid to Tamura and Matsuno for the fiscal years ending October 31, 1942, 1943 and 1944;

(2) Sustained a depreciation rate for tractors, automobiles and trucks instead of a composite rate used by petitioner for the fiscal years ending in 1941, 1942, 1943 and 1944;

(3) Sustained the use of $6,000 each for Tamura and Matsuno, as comparable salaries for each of the years 1936, 1937, 1938, and 1939, in converting the income of petitioner's predecessor partnership for each of said years into Supplement A, average base period net income for the purpose of computing the petitioner's excess profits credit under the income method.

The findings of the Tax Court in each of these propositions are clearly erroneous.

■ Taxpayer paid $13,000 each to Tamura and Matsuno for the fiscal year ending October 31, 1942. The Commissioner disallowed all but $3,000 to each. The additional allowances of salary were made, not by the Japanese, but by an independent board for extraordinary services, which is cogent evidence that the salaries "would ordinarily be paid for like services under like circumstances." Section 29.23(a)6(3), Treasury Regulations 111. The corporation benefited in that there was a net profit of $102,635.27 in a very difficult situation owing to hostility. The corporation also benefited by the negotiation by these officers of a very advantageous sale and lease. The fact that the sale was made retroactive did not minimize the services. The Commissioner seizes upon these circumstances to base a claim that the payments to the officers were dividends. The argument seems to be that, if they made no money for the corporation, the services were of no value and there should be no salary, but, if the corporation made money, then payment of salaries is dividend.

■ The determination of a reasonable salary based upon evidence is a question of fact ordinarily. But in this instance, the disallowance seems to be in accordance with some arbitrary principle not appar-

ent in the record. The fact that adjustments in the operation of the business of the corporation were caused by prejudice and hatred toward any entity which had connections with Japanese, even though they were citizens, had no relevancy. Tamura and Matsuno were the only persons who had the interests of the corporation at heart and who continuously worked to accomplish its survival and welfare. The distinction between the Japanese, as stockholders and as officers, may have precedents in other situations. But, as applied here, it is simply an arbitrary rule which is disadvantageous to the taxpayer and highly favorable to the government.

The specious doctrine as to salaries and earnings of the corporation, which is outlined above, is better illustrated by the fact that the Commissioner disallowed salaries for the next two years altogether. During the fiscal years ending in 1943 and 1944, even though Tamura and Matsuno were only minor officers of the taxpayer, they travelled several thousand miles and worked under very difficult conditions in an attempt to re-establish the business of the corporation in some place where there was good farm land and where the corporation could pursue the occupation which it had successfully conducted before with these two as corporate officers. The circumstance that they also sought personal relocation and establishment is of no significance. Even though the taxpayer had disposed of and leased all of its property, it had a right to attempt to resume the business in which it had been successful. The mere fact that it has not been placed in the position to resume may be partially due to the injustice done in this proceeding by the imposition of these taxes.

■ The fact that these two Japanese removed themselves from the roll of directors and officers of Vegetable Farms and continued the management of the corporation by the use of nominal directors and operators was probably the greatest service which they could have done to the corporation, and, if the corporation paid them for this service, we do not think it lies in the mouth of anyone to say that the service was not valuable. It is obvious enough that the payment of these salaries was not made for the purpose of defeating tax to the government. The situation which forced the retirement was oppressive enough, and, while at the time it may have been justified as a military necessity, it seems vindictive to punish this corporation further because it happened to be owned by citizens of Japanese ancestry, even in time of war with the government of Japan.

■ There seems to be no justifiable basis likewise for the Tax Court to disallow the depreciation which was set up by the taxpayer. Therefore, the findings of fact are set aside. The depreciation was apparently arrived at by some process which we cannot plumb. The figure of ten years for tractors seems to have been found in thin air. The opinion of the Tax Court shows the depreciation figure used was pure speculation. But it is suggested that the burden is upon the petitioners to prove the Commissioner wrong by the preponderance of the evidence. Testimony was introduced. There were facts in the record upon which some determination could have been based. Two witnesses testified that a proper depreciation rate would be twenty-five per cent per annum. The Commissioner's figure is unsupported and is clearly erroneous.

■ There is a further matter which is probably a question of law. The Commissioner, affirmed by the Tax Court, computed the base period net income of the partnership, which was the taxpayer's predecessor, and allowed $12,000 a year as a reasonable deduction for the salaries of the partners for services actually rendered. In this respect, the Tax Court absolutely disregarded the fact that the predecessor partnership paid a salary to Tamura, as general manager, in the respective amounts of $2,100, $2,100, $2,250 and $2,100. While the Commissioner purported to act pursuant to § 742 of the Internal Revenue Code, 26 U.S.C.A. § 742, and § 35.742–1(b) (2) of Treasury Regulations 112, this computation was not correct. The partnership farmed an average of 2,500 acres during the base period and 3,500 acres during the fiscal year ending in 1941. The amount of work involved in operating the business of

the partnership was not the same as that involved in the business of the taxpayer. The use of the salaries paid by taxpayer during the first year of its corporate existence is not controlling in determining comparable salaries. Matsuno rendered only part time services to the partnership during the base period. The salary paid to him by taxpayer during the first year of its corporate existence, when he worked full time, could not be used as a comparable salary.

In all respects, the basis used by the Commissioner was unfair and unreasonable.

Reversed and remanded for further proceedings in accordance with this opinion.