Solomon RAFAL, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 2494.

United States District Court
E. D. Virginia,
Norfolk Division.

March 9, 1959.

Stanley E. Sacks, Norfolk, Va., for plaintiff.

John M. Hollis, U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

This is an action under the provisions of the Social Security Act, 42 U.S.C.A. § 401 et seq., in which plaintiff contends that he is aggrieved by the final decision of the Social Security Administration, Department of Health, Education and Welfare, dated May 21, 1957, wherein plaintiff was denied old-age benefits as an alleged fully insured individual having attained a retirement age. 42 U.S.C.A. § 414(a).

The ultimate question for determination is whether plaintiff was a "fully insured individual" who had acquired nine quarters of coverage by reason of "self-employment income" to entitle him to old-age benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq.

Following his written application on April 16, 1956, the local and regional claims offices denied plaintiff any benefits under the Act. Plaintiff was then granted a hearing before a Referee who, on March 21, 1957, after considering the evidence presented, denied the benefits for reasons hereinafter stated. Plaintiff appealed to the Appeals Council of the Social Security Administration of the Department of Health, Education and Welfare, where the decision of the Referee was affirmed on May 21, 1957; the Appeals Council adopting the written opinion of the Referee and his "statement as to the evidentiary facts" and "all of the inferences, findings and conclusions of the referee based upon the evidentiary facts". Having exhausted his administrative remedies, plaintiff seeks this judicial review within the time prescribed by law under 42 U.S.C.A. § 405(g). It is recognized that the statute specifies that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive".

The Administrative Procedure Act, 5 U.S.C.A. § 1009(e), prescribes the function of a judicial review of agency action. The Administrative Procedure Act is read in *pari materia* with the appropriate section of the Social Security Act on the subject of judicial review. Goldman v. Folsom, 3 Cir., 246 F.2d 776; Willapoint Oysters v. Ewing, 9 Cir., 174 F.2d 676, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527; Julian v. Folsom, D.C., 160 F.Supp. 747. With that in mind, let us consider the facts which are, as stated in the Referee's decision, not in dispute.

Plaintiff was born in Russia on July 5, 1890, but has lived in Norfolk, Virginia, for many years. Some years ago he organized the Rafal Packing Company and associated with him in said business were his two sons, Bernard and David. In 1952 plaintiff decided to retire from business, and he thereupon sold his interest in Rafal Packing Company to his two sons for a consideration of $17,000, evidenced by a promissory note dated January 17, 1952, payable weekly at the rate of $50 beginning January 28, 1952 [1]. Plaintiff had invested the aggregate sum of $21,000 in said business and, to the extent that it may be considered in light of the total investment, the sales price of $17,000 apparently represented an allowance of $2,000 to each of plaintiff's sons. At the time of his retirement in 1952, plaintiff had accumulated four quarters of coverage for qualification under the

---

[1]. While the Referee's findings did not specify the manner of payment of said note, counsel agreed at the time of argument that the facts as stated are correct.

provisions of the Social Security Act, whereas, under the terms of the Act, nine quarters are required before one is entitled to old-age benefits. Plaintiff performed no services for Rafal Packing Company after January, 1952, until January, 1954, when the partnership agreement in controversy was executed.

It is conceded by all parties that there is nothing improper or questionable about a person entering bona fide employment for the express purpose of acquiring a wage record which will enable him to qualify for an old-age insurance benefit, and that such action is clearly within the spirit, as well as the letter, of the law.

Plaintiff, following his retirement in 1952, discovered that he did not have a sufficient number of quarters to qualify him for coverage under the Act. Admittedly for the recognized legitimate purpose of acquiring the additional quarters to entitle him to old-age benefits, the plaintiff, on January 5, 1954, entered into a partnership agreement with his sons, the details of which included a provision that the three partners would (1) share equally in the losses and (2) give undivided time and attention to the business. No capital was invested by plaintiff. Each of the two sons was permitted to draw $65 per week for living expenses to be charged against his respective share of the profits. As to the plaintiff, the agreement contained the following language which is the crux of this case:

"5. The said Solomon Rafal shall be entitled to the sum of Three Thousand Six Hundred ($3,600.00) Dollars per year from the profits of said partnership, and shall be permitted to draw the sum of Fifty ($50.00) Dollars per week for his living expenses, which said weekly sums so drawn shall be charged against the last mentioned annual sum. It is further agreed between the parties hereto that all such sums so paid to the said Solomon Rafal hereunder shall also be credited against the payment of that certain negotiable promissory note of Seventeen Thousand ($17,000.00) Dollars, bearing date January 17, 1952, and made by the parties of the second part [the sons] to the order of the party of the first part [plaintiff herein]; to the end that the obligation of said note shall be reduced by an amount equal to whatever amount the said Solomon Rafal shall draw from this said partnership.

* * * * * *

"8. In the event of the death of the part[y] of the first part, or in any event whereby the said party of the first part shall no longer draw any funds from the firm for living expenses or for annual profits, then the balance due on the promissory note above mentioned shall again become due and payable in the manner therein set out, which provision shall be in lieu of any and all interest of the part[y] of the first part [Solomon Rafal] in and to said firm and/or its assets, and nothing contained in paragraph 6 of this agreement, shall be construed as creating any interest in the party of the first part [Solomon Rafal], or his heirs, other than what is mentioned in this paragraph."

Under the foregoing agreement it will be noted that plaintiff would draw a maximum of $3,600 per annum from the profits, if any, of the partnership, and that this amount, when paid to plaintiff, would automatically be credited upon the balance due on the $17,000 note. The weekly drawing account for living expenses was regularly paid by check and, at the end of each year, plaintiff received a check for the balance to aggregate the sum of $3,600; the total payments to plaintiff being credited upon the note. *It is conceded that plaintiff worked 48 hours per week during all of 1954 and 1955*, or a total of eight quarters to be added to his four quarters in 1951, or three more quarters than the statutory minimum to qualify for coverage under the Act. The partnership was dissolved as of December 30, 1955, and notice of

such dissolution appeared in a legal advertisement contained in a local newspaper from January 12–16, 1956.

Partnership tax returns reflected the distributive share of the profits paid to plaintiff during the years in question. Plaintiff reported on his individual income tax returns the $3,600 received from the partnership for 1954 and 1955.

During the same two-year period, if plaintiff had not performed services as a partner of Rafal Packing Company, he would have received $2,600 per annum at the rate of $50 per week in the form of payments on the note executed by his sons. Admittedly he could properly have used this money as a gift to his sons by crediting the amount upon the note. By entering into the partnership in January, 1954, he received $1,000 per annum in excess of the amount his sons were obligated to pay him according to the terms of the note. The Referee did not discuss this phase of the case.

The essence of the Referee's conclusions is contained in the following language:

"The Social Security Act does not contain any provision prohibiting any individual from obtaining employment for the sole purpose of acquiring quarters for coverage, which was freely admitted in this case. The referee takes no exception to this action on the part of claimant and in no way questioned the credibility of either witness. There is no question of fact in this case as the facts are agreed upon. The sole question is whether the $3,600.00 per annum received by claimant from the Rafal Packing Company was net earnings from self-employment. The evidence is clear that the money received by claimant was credited to the note as provided in the agreement above quoted as was the intention of all parties to the agreement. The generosity of the father to his sons in this case is to be commended. However, it appears that this generosity defeated the purpose claimant had in mind of obtaining additional quarters of coverage. This remuneration received by claimant was, in the opinion of the referee, not a payment from the profits of the business, but was payment made against the obligation of the promissory note, and was, therefore, not net earnings from self-employment. The referee finds that claimant did not have net earnings from self-employment in excess of $400.00 for the taxable years 1954 and 1955. He further finds that claimant has only four quarters of coverage and is not a fully insured individual under the provisions of the Social Security Act."

Effectively, the Referee ruled that plaintiff made a gift of his services during the two years in controversy. Whether he made a gift of his services or a gift of the financial remuneration received for such services is of prime consideration. If the partnership had been without profits in 1954 or 1955, plaintiff would have been entitled to no money and the note would not have been credited with any payments. Indeed, in such a situation, the sons would have been obligated to pay plaintiff the $50 per week as specified in the note.

The principal problem is to give effect to the intent of Congress as expressed in the Social Security Act, and yet remain within the framework of the rules governing administrative procedure and the judicial review of administrative decisions. As was said in Social Securty Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 640, 90 L.Ed. 718:

"The purpose of the Federal Old Age Benefits of the Social Security Act is to provide funds through contributions * * * for the decent support of elderly workmen who have ceased to labor." [2]

2. The Act has since been extended to cover self-employed individuals and others.

■ The conclusiveness of administrative determinations has always been a problem to solve. While the statute (42 U.S.C.A. § 405(g)) states only that findings of fact supported by substantial evidence shall be conclusive, a long line of authorities suggests that inferences and conclusions drawn from such facts are similarly conclusive upon the judicial body reviewing the action. United States v. Lalone, 9 Cir., 152 F.2d 43; Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 336, 86 L.Ed. 301; N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 130–131, 64 S.Ct. 851, 88 L.Ed. 1170.

Subsequent to the passage of the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1001 et seq., there is reflected a broadened power of judicial review. N. L. R. B. v. Southland Mfg. Co., 4 Cir., 201 F.2d 244. In Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, Justice Frankfurter traced at length the history of judicial review as interpreted by the Administrative Procedure Act and pointed out that the latter Act was enacted with the provision that the entire record must be searched to determine whether or not the agency decision was founded upon substantial evidence. It is said, in part (340 U.S. 488, 71 S.Ct. 465):

"Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [Labor] Board's view.

\* \* \* \* \* \*

" \* \* \* the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function."

■ While it is freely recognized that the Administrative Procedure Act did not drastically revise the concept of judicial review, it is nevertheless apparent that courts are no longer conclusively bound by any administrative interpretation of an Act, and the Gray and Hearst cases may be considered modified to this extent. In Social Security Board v. Nierotko, supra, the court states that the Social Security Board's administrative decision is entitled to "great weight" because of the "expert judgment" and, in interpreting a statute so as to apply to particular circumstances, it acts as a delegate to the legislative power. The preliminary conclusion lies with the Board, but it is not *per se* binding. The Administrative Procedure Act provides that: " \* \* \* the reviewing court shall decide all relevant questions of law \* \* \* [and] interpret \* \* \* statutory provisions \* \* \* ". The issue in the instant case essentially presents a matter for statutory construction, or a matter of law, which should, in the final analysis, be determined by the reviewing court.

To the same effect, see: Boyd v. Folsom, 3 Cir., 257 F.2d 778; Baumgartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525; Carroll v. Social Security Board, 7 Cir., 128 F.2d 876; Miller v. Burger, 9 Cir., 161 F.2d 992; Ayers v. Hobby, D.C., 123 F.Supp. 115; MacPherson v. Ewing, D.C., 107 F.Supp. 666.

Irrespective of the Referee's finding manifestly indicating "good faith" on the part of plaintiff and his sons, defendant urges that the facts reveal the existence of a spurious arrangement or artifice in order to acquire the necessary quarters of coverage. On the contrary, agreeing with the Referee, there has been no attempt at deception—it is merely a bona fide attempt by plaintiff to qualify under the Act for old-age benefits. If Congress intended to place any restriction upon an individual entering bona fide employment for the express purpose of acquiring a wage record to qualify for old-age benefits, there would be no difficulty in

approving defendant's decision, but such efforts are conceded to be properly within the letter and spirit of the law. Defendant merely seeks to penalize the plaintiff for giving the proceeds received from his labor because he openly disclosed his intent by the terms of the partnership agreement. Had the partnership agreement failed to reveal the credits on the note, plaintiff could nevertheless have legally accomplished the same act. Absent the provision as to credits on the note, it is manifest that plaintiff would have qualified for coverage under the Act.

The situation is in sharp contrast to Gancher v. Hobby, D.C., 145 F.Supp. 461, 463, upon which defendant so strongly relies. The plaintiff in that case was a physician who caused a corporation to be formed and then conveyed to it two vacant lots and an apartment building. The plaintiff occupied one apartment for which he purportedly paid a rental of $60 per month to the corporation. His office, also in the apartment, yielded a rental of $100 per month to the corporation. His son and daughter-in-law occupied another apartment at a monthly rental of from $50 to $100, the exact amount being undetermined. An unmarried daughter paid $40 per month for her room. The only other apartment was rented to an outsider for $78 per month. As secretary-treasurer of the corporation, plaintiff received $300 per month from the maximum corporate gross income of $378 per month. The corporation existed for the minimum time required for plaintiff to submit his claim for benefits, and there was evidence that plaintiff had actually received his salary for only three quarters. The Referee, while conceding that it was entirely proper for an individual to engage in bona fide employment for the purpose of obtaining a wage record, found that, despite the existence of a legal entity, the payments to plaintiff constituted nothing but a "sham" contrary to the spirit of the Act, and said:

"The picture of the claimant, as an individual, making rental payments to himself as an officer of the corporation and then, in turn, paying himself for his 'services' to the corporation approaches the farcical."

That Gancher is correctly decided is clear. There were no "bona fide" services rendered to the corporation. But here we have an individual who has rendered 48 hours per week services for a period of two years, during which time he was personally liable for all debts of the partnership. The fact that he had no capital invested in the partnership is of no consequence as many such partnerships are formed wherein one party invests the capital, and the other furnishes his knowledge and efforts. Admitting the purpose of the partnership formed in 1954—a purpose sanctioned by the Board —there is certainly no sham or fraud under the facts of this case.

"Self-employment income" is defined in 42 U.S.C.A. § 411(b) as being "the net earnings from self-employment derived by an individual * * * during any taxable year after 1950", provided that the net earnings for the taxable year are at least $400. The term "net earnings from self-employment" is stated in 42 U.S.C.A. § 411(a), so far as it may be here pertinent, to be:

"* * * his [the individual's] distributive share * * * of the ordinary net income or loss, as computed under section 183 of Title 26 [now §§ 702, 703, Internal Revenue Code of 1954, 26 U.S.C. §§ 702, 703] from any trade or business carried on by a partnership of which he is a member * * *"

A "trade or business" for the purpose of determining "self-employment income", or "net earnings from self-employment", is stated in 42 U.S.C.A. § 411(c) to be as defined in § 23 of Title 26 (now § 161 et seq., Internal Revenue Code of 1954, 26 U.S.C. § 161 et seq.). See: 20 C.F.R. § 404.1050 and § 404.1051(d)

In 42 U.S.C.A. § 411(d), it is said:

"The term 'partnership' and the term 'partner' shall have the same

meaning as when used in supplement F of chapter 1 of Title 26 [26 U.S.C. § 761]."

And in 20 C.F.R. 404.1051(f), it is provided that:

"For the purpose of determining net earnings from self-employment a partnership is one which is recognized as such for income tax purposes."

Turning to the definition of a "partnership" and "partner" under the Internal Revenue Code, to which the Social Security Act expressly refers, we find (26 U.S.C. § 761) that a partnership is, in essence, any association for carrying on a business which is not classified as a corporation, trust or estate for income tax purpose. The statutory definition includes even those associations which are not classified as partnerships at common law. The term "partner" is defined to be "a member of a partnership".

■ We need not consider the status of Rafal Packing Company as a partnership under common law—nor the status of plaintiff as a partner at common law. Under the statutory definitions hereinabove cited, Rafal Packing Company is a partnership, and Solomon Rafal was a partner thereof during 1954 and 1955.

As noted (42 U.S.C.A. § 411(a)), "net earnings from self-employment" is, so far as applicable here, the partner's "distributive share * * * of the ordinary net income" which, in turn, is stated to be (26 U.S.C. § 704):

"A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement."

Neither of the exceptions as specified in the foregoing statute is applicable to the factual situation presented—hence we are bound by the terms of the partnership agreement. The "distributive share" of plaintiff is stated to be $3,600, and this constitutes plaintiff's "net earnings from self-employment."

In the opinion of this Court the Referee has incorrectly interpreted the statute and erroneously applied the law to the facts of the case. The payments so received may have resulted in payments made against the obligation of the note, but this obligation was that of the sons and not the partnership. The "self-employment income" was received from the partnership. Had the partnership lost money during either of the two years in question, no credit would have been applied on the note. Manifestly the Referee treated plaintiff's *services as a gift* to his sons. Actually plaintiff made a gift of the money received for his share in the partnership or, stated otherwise, he made a gift to his sons of his "net earnings from self-employment".

Aside from the foregoing, the Referee's conclusions are unsupported by substantial evidence when the record is viewed in its entirety. This record reflects that leases of the partnership were in plaintiff's name; that plaintiff was responsible for (1) hiring and firing employees, (2) making expenditures of capital, and (3) buying and selling for the firm. It is also conceded that plaintiff received the weekly checks and used the same in accordance with his wishes. In Thorbus v. Hobby, D.C., 124 F.Supp. 868, affirmed sub. nom. Folsom v. Poteet, 9 Cir., 235 F.2d 937, plaintiff leased a shabby apartment-rooming house and, in turn, rented the apartments therein to people on a daily, weekly or monthly basis. Under the Social Security Administration regulation appearing at 20 C.F.R. 404.1052, plaintiff could not qualify for old-age benefits if he was merely operating an apartment house without more. His claim for benefits was disallowed, although the Referee "took the facts as testified to by the plaintiff and corroborated by the documentary evidence, and, on the basis of these facts, concluded that the plaintiff was not within the definition of self-employed but, instead, derived his income from the rentals of real estate and thus was not entitled to benefits". [124 F. Supp. 870.] The district court allowed the benefits and pointed out that plaintiff *worked at* the apartment house, in addi-

tion to merely renting the rooms. On appeal, the Ninth Circuit affirmed, saying [235 F.2d 938]:

> "In law, this is a borderline case. We shall always have them when delineations must be made. Of course, there are areas where the fact finder should not be disturbed on his findings on undisputed facts, where he may decide which facts point more strongly to one conclusion than to another.
>
> \* \* \* \* \* \*
>
> "If we are to have a social security system, certainly by interpretation it should not be given a narrow construction as to those covered. Likewise, it should not be construed loosely. The apposite regulations enunciate a liberal policy."

In MacPherson v. Ewing, supra, an application for a lump sum death payment was involved, the Administrator contending that decedent had not earned wages for a sufficient period of time to make him an insured individual under the Act. Eight monthly payments of $300 were paid by the employer during the illness of the deceased while he was confined to his home but the Administrator found these payments to be what is designated as "generosity pay". The payments were not pursuant to any benefit plan which would have made them non-wages. In reversing the Administrator, the court said [107 F. Supp. 667]:

> "Whatever may have been the motives of the employer, whether prompted by generosity or selfishness, they are immaterial in determining the nature of the payments. The record, without dispute, shows that the relation of employer and employee existed. To permit the Administrator to rest decision upon the *motives* of the employer or upon the *effectiveness* or *adequacy* of the employee's services or labor, absent any element of fraud or deceit, would be to entrust to him a power far beyond that statutorily conferred upon him."

In the instant case the legal conclusion arrived at by the Secretary is not supported by substantial evidence from the record as a whole. If wages are permitted to be paid to one who is physically unable to perform services, and such payments are properly included under the Act, then, *a fortiori*, payments of "self-employment income" may be made to one who performs full services and, in turn, permits a credit for the amounts paid on an obligation due to the individual's attempting to assert his qualifications under the Act.

While the action instituted seeks interest and costs, the same are not allowable.

An order will be entered reversing the decision of the Secretary to provide that plaintiff is a "fully insured individual" within the meaning of the Act.