Arthur S. FLEMMING, Secretary of
Health, Education and Welfare of
the United States, Appellant,

v.

Helmer F. LINDGREN, Appellee.

No. 16131.

United States Court of Appeals
Ninth Circuit.

Jan. 20, 1960.

George C. Doub, Asst. Atty. Gen., Alan S. Rosenthal, Douglas A. Kahn, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Portland, Or., for appellant.

Jacob, Jones & Brown, Eugene E. Feltz, Portland, Or., for appellee.

Before POPE, CHAMBERS and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

Lindgren is a small Oregon chicken farmer. He was self-employed through 1952. He wasn't particularly prosperous and, like millions of other Americans, wanted to share in the beneficences of social security payments. As the law stood in 1952, in his agricultural self-employment he couldn't obtain the benefits.[1] As of then, the objective was a salary of $300 per month for six quarters.[2] With that, and having attained the age of 65, he would then be eligible for the maximum amount of social security, provided he did not thereafter earn over $75 per month,[3] later raised to $100.

A lawyer found Lindgren an old unused corporation (cheaper than a new one), changed its name to Lindgren and Company, and issued the stock to Lindgren, his wife and a stepson. Immediately, Lindgren's salary as president was fixed at $300 per month and the corporation then engaged in what had been Lindgren's chicken business.

---

1. 42 U.S.C.A. § 411(a) (2) prior to amendment of September 1, 1954, Public Law 761, 68 Stat. 1052 et seq.

2. 42 U.S.C.A. § 415(a) (1) and § 409(a) prior to amendment of September 1,

1954, Public Law 761, 68 Stat. 1052 et seq.

3. 42 U.S.C.A. § 403(b) (1) prior to amendment of September 1, 1954, Public Law 761, 68 Stat. 1052 et seq.

By the fall of 1954, Lindgren was ready for his benefits. So his salary was reduced to $75. (Later when the law permitted earnings of $100 per month, up went the salary to that amount.)

We must start with the point that had Lindgren's business been prosperous enough to justify a salary of $300 a month, the law is so written that Lindgren would be entitled to just the "pension" he says he was. But the secretary questioned Lindgren's claim. After an appropriate hearing before an examiner, the secretary found that the net income of the corporation really was just a total of $744.84 for 1953 and 1954. This, it was said, would be deemed Lindgren's wages for the period—because it was the amount honestly available to pay wages. So Lindgren would be allowed social security payments based upon this meager amount.

Lindgren then filed his action in the United States District Court[4] to overturn the secretary's award. The district court, relying on MacPherson v. Ewing, D.C.N.D.Cal., 107 F.Supp. 666, overturned the secretary's award as arbitrary and capricious and entered judgment that the benefits should be paid on the basis of the salary paid.

We are in full agreement with neither. Certainly the administrator of the plan must be permitted to look through form to substance. Surely it would not be permissible for relatives to set up a corporation for six months, pay a ne'er-do-well a salary of $300 a month for six quarters and have him do absolutely nothing (if provable) from beginning to end, then shift the burden of his support to the government. And where Lindgren, as the only real owner of Lindgren and Company, was using this rather shallow corporate device, the government was entitled to take not one, but several long looks at it.

We realize that in his recommendations to the secretary the examiner came up with a handy rule—limit the salary to the amount of the earnings of the company, such being the amount that the corporation with negligible capital could sensibly afford to pay. Unless the corporation is held a complete sham and is entirely vitiated, in which case Lindgren would be back in his agricultural self-employed category ineligible for the benefits,[5] we think that the secretary should have taken into account some other factors—because the test is, What is "wages" under the act?[6] He should reconstruct a reasonable wage under all of the circumstances. These might include past history of the same little business, wages of a laborer doing the same type of work as Lindgren, and perhaps a number of other factors will come to mind. Probably no one single factor should control.

It does appear that perhaps in the two years involved, economics were against Lindgren more than usually. The corporation did have a few assets. In the long run a corporation's earning record limits the salaries it can pay, but some pay more than they can afford for a while and then go out of business, or often they survive to become profit-making organizations. And persons nonetheless have had help in getting social security—all as a byproduct of the overpayment.

We realize the scope of the review by the district court and by us is limited.[7] But we do hold that an arbitrary standard was applied when no factor other than the exact actual earnings of the corporation was applied. Our decision still leaves the administrator of the act broad latitude for the exercise of his discretion.

The secretary concedes that if we should reverse, a new hearing should be held in the district court because that

---

4. Jurisdiction was in the district court by virtue of 42 U.S.C.A. § 405(g).

5. That is, as of the time he sought to qualify.

6. 42 U.S.C.A. § 409.

7. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Ferenz v. Folsom, 3 Cir., 237 F.2d 46.

court did not consider Lindgren's claims that the examiner did not adequately calculate the earnings of the company, the commissioner's yardstick.

We are of the opinion that the district court should send the matter back to the secretary for a redetermination.

Reversed for proceedings consistent with this opinion.

POPE, Circuit Judge.

I, too, would reverse with directions to remand to the Secretary for a redetermination, but I would do it for a different reason and for a different purpose.

I do not quite understand the referee's reference to Gancher v. Hobby, D.C., 145 F.Supp. 461, for it is plain his decision was not based on any finding that the corporation was a sham. His findings indicate otherwise. He says, "It is unquestioned here that as an officer of Lindgren and Company, commencing in February, 1953, the claimant was in an employment relationship within the meaning of § 210 of the Social Security Act, and specifically § 210(K) (1) [42 U.S.C.A. § 410]."[1] He "assumes good faith on the part of the claimant."

He could not do otherwise upon the record he had before him. In Rhoads v. Folsom, 7 Cir., 252 F.2d 377, 380, the court stated the principle which must govern here: "It may be true that the arrangement by which Mr. and Mrs. Rhoads were each to be paid was for the purpose of bringing them within the coverage of the Social Security Act. Even so, we see no legal impropriety in their so doing if in fact they both rendered services for which they were paid in accordance with an agreement. It has often been held that a taxpayer may arrange his business affairs in any manner which the law permits in order to avoid the payment of a tax. Applying the same principle, we think Mr. and Mrs. Rhoads could properly enter into an agreement with the lumber companies by which they would each become employees and be paid for their services. The terms of that agreement were a matter for the parties and binding, providing, of course, it was made in good faith. There is no proof, not even the contention, that it was otherwise made."

The court's reference to a similar rule relating to taxpayers is an apt one. The taxpayer's desire to reduce his taxes is irrelevant; his motive "is not the crucial factor". Gilbert v. Commissioner, 2 Cir., 248 F.2d 399, 404–405, where the court cited a number of cases to the effect that "it is too well settled to require discussion that legal transactions cannot be upset merely because the parties have entered into them for the purpose of minimizing or avoiding taxes which might otherwise accrue."

The same principle applies here. As stated in Rafal v. Fleming, D.C.E.D.Va., 171 F.Supp. 490, 492: "It is conceded by all parties that there is nothing improper or questionable about a person entering bona fide employment for the express purpose of acquiring a wage record which will enable him to qualify for an old-age insurance benefit, and that such action is clearly within the spirit, as well as the letter, of the law." I have no doubt that it is a common practice deliberately to fix a wage in such an amount as will qualify the employee for social security benefits. But if the recipient is really an employee, and really does work as such, the amount of the wage is none of the business of the Secretary. And it was no concern of his if Lindgren here chose to set up a corporation and became its employee, if, as is conceded, he "was in an employment relationship."

It seems to me to be equally clear that the Referee's findings were based solely upon the fact that during two years, 1953 and 1954, the corporation's earnings were not sufficient to pay the salary. The

1. This is what distinguishes this case from such cases as Stark v. Flemming, D.C. Cal., 181 F.Supp. 541, 542. In that case it appeared that the president of a newly formed corporation, an elderly lady whose leased out farm was the only corporate asset, really performed no substantial work or service—they were "minimal in extent." The finding was that there was "not in fact a bona fide employment for salary or wages."

decision was supported by no other facts or findings. In my view that is not enough. Many a newly formed corporation does business for several years at a loss. But it has to pay wages and salaries just the same.[2] No one would question that employees paid during those times were fully qualified for social security benefits.

Here, of course, we cannot ignore the fact that the corporation continued an existing business, much as it had been carried on before. If it were found that the size and character and potentialities of that business were such that Lindgren must have known that the business could *never* pay a salary sufficient to qualify him, and if, in consequence it were found and concluded that the employment was only a simulated one, then the situation would be otherwise. But we do not have any such information. All we know is what was earned during two years. We can infer that in prior years Lindgren made a living in some amount and even accumulated savings (as he had money to loan the corporation), but we distinctly do not have information to warrant a conclusion that the business could never hope to provide his salary.

For this reason I think the district judge was right in disapproving the Secretary's action. I think this does not require affirmance of the judgment, for, under Title 28 U.S.C.A. § 2106, we are authorized to "require such further proceedings to be had as may be just under the circumstances." And the district court under Title 42 U.S.C.A. § 405(g) "may, at any time, on good cause shown, order additional evidence to be taken before the Secretary * * *." I would guess that in the past this claimant in operating his chicken business must have

made that business not only feed the chickens but feed himself; otherwise I would think he would not be in the business. At this time it surely does not appear that the arrangement which he made for a corporation and the payment of a salary was a sham because there was absolutely no prospect whatever of the business being sufficient to pay a salary.

I think the parties should have the chance to adduce additional evidence, if they have it. This simply means that it is my view that where an administrative officer's decision is reviewed by the district court and properly held erroneous, it is proper for the court to remand for further action at the administrative level.

2. In Vegetable Farms v. Commissioner, 9 Cir., 191 F.2d 677, two Japanese who had been placed in a concentration camp during the war with Japan, and whose corporation had disposed of all its property, in 1943 and 1944 again became directors and officers of the corporation and devoted their efforts to an attempt to resume a business which had vanished. This court disapproved the commissioner's disallowance of their salaries during those years. We said: "Even though the taxpayer had disposed of and leased all of its property, it had a right to attempt to resume the business in which it had been successful." 191 F.2d at page 679. In other words, the fact that the corporation had no business in those years was no reason for denying it deductions for salaries paid during its attempt to get started.