Joseph E. **BILLMAN**, Plaintiff,

v.

Marion B. **FOLSUM**, Secretary of the
Department of Health, Education
and Welfare, Defendant.

Civ. No. 5629.

United States District Court
D. Minnesota,
Fourth Division.

March 26, 1959.

Earl J. Maxwell, Minneapolis, Minn.,
for plaintiff.

Clifford Janes and Kenneth G. Owens,
Asst. U. S. Attys., St. Paul, Minn., for
defendant.

NORDBYE, Chief Judge.

The above-entitled cause came before
the Court for trial without a jury.

On October 4, 1956, the Appeals Coun-
cil of the Department of Health, Educa-
tion and Welfare determined that Joseph
E. Billman was not entitled to social se-
curity benefits for 1955. Pursuant to 42
U.S.C.A. § 405(g), Billman thereafter
brought action in this Court to review
the decision of the Appeals Council. Sec-
tion 405(g) states:

"Any individual, after any final
decision of the Secretary made after
a hearing to which he was a party,
irrespective of the amount in con-
troversy, may obtain a review of
such decision by a civil action com-
menced within sixty days after the
mailing to him of notice of such de-
cision or within such further time as
the Secretary may allow. Such ac-
tion shall be brought in the district
court of the United States for the
judicial district in which the plain-
tiff resides or has his principal place
of business, or, if he does not reside
or have his principal place of busi-
ness within any such judicial dis-
trict, in the United States District
Court for the District of Columbia.
As part of its answer the Secretary
shall file a certified copy of the tran-
script of the record including the
evidence upon which the findings
and decision complained of are
based. The court shall have power
to enter, upon the pleadings and
transcript of the record, a judgment
affirming, modifying, or reversing
the decision of the Secretary, with
or without remanding the cause for

a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before it files its answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm its findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which its action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions."

The Government has moved for a summary judgment based on the pleadings and the entire record before the Appeals Council. Billman apparently does not dispute that a final disposition of the case can be made under this motion. The Court, therefore, should consider the ultimate question to be determined, i. e., whether or not there is substantial evidence to support the decision

of the Appeals Council and the decision of the Referee, Earl D. Mora, which the Appeals Council incorporated by reference into its decision of October 4, 1956.

Billman contends that there is *no* evidence to support the decision of the Referee and Appeals Council, so the issue is clearly drawn. Although Billman does not disagree with the Government's statement of the law, a definition of substantial evidence is necessary to a proper disposition of this case. In Larmay v. Hobby, D.C.E.D.Wis., 1955, 132 F.Supp. 738, 740, the court stated,

"* * * Certainly if this matter were before a jury on testimony and return of the defendant, a court could not direct a verdict. It would at least present an issue of fact. The test of substantiality involves such relevant evidence as a reasonable mind would accept as adequate to support a conclusion, Willapoint Oysters, Inc. v. Ewing, 9 Cir., 1949, 174 F.2d 676, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527. 'Substantial' evidence means enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660."

With this definition in mind, the facts of this case can be looked upon to determine whether or not the decision of the Appeals Council was based on substantial evidence. In reaching its decision, the Appeals Council and the Referee found that Billman received income from self employment or salary in excess of that which would entitle him to any social security benefits for 1955. More simply stated, the Appeals Council found that Billman did not actually retire from his business interests.

The factual situation from which the controversy arises is this: Plaintiff had operated the Joe Billman Mortuary in Minneapolis for a number of years. The exact manner in which the mortuary was

operated prior to 1955 is not clear. Apparently, however, Billman & Affiliates, Inc., d.b.a. the Joe Billman Mortuary, conducted the affairs of the mortuary. The mortuary property was owned by a separate corporation, the House of Flowers Mortuary, Inc. Billman acted as president and manager of both these corporations. Billman also acted as president and manager of the 22 E. 22nd St. Corporation, a family corporation which owned an apartment building at the address of the corporate name. In addition, he was the dominant and apparently managing partner of the Rose Management Co., a partnership which operated the apartment at 22 E. 22nd Street. He was chief stockholder and apparently president of Sherwood Apts., Inc.; Sherwood Apts., Inc., was a family corporation which owned and operated an apartment building. Billman also had held a major partnership interest in the Fuller Hotel, although he denies having had anything to do with the operation of this business for a number of years. In addition, other real estate interests were owned by Billman and his wife in Phoenix, Arizona, under the name of Phoenix Enterprises.

Late in 1954 Billman had decided to retire. He had suffered illness and would reach the age of 65 in February, 1955. On January 17, 1955, the various family corporations and partnerships held annual meetings. At that time the corporations acknowledged plaintiff's desire to retire and proceeded to grant "pensions" in varying amounts. The right to these pensions had purportedly been in existence for a number of years in some instances. The management of the corporations was turned over to John Billman, plaintiff's son, but the minutes recite that plaintiff agreed to render any assistance necessary in the transition period as consideration for receiving adequate pensions. Billman also retained the title of president in these corporations until June of 1955 when he resigned so as to negative possible inferences against his interests by the social security administration.

The annual meeting minutes also reveal that the corporations were indebted to Billman in various amounts and acknowledged that interest payments were to be made on such indebtedness.

Plaintiff notified the social security administration of his retirement but was refused the benefits to which he considered himself entitled. In the administrative appeals, he failed to persuade the hearing officers that he was entitled to receive benefits for 1955. The Referee's statement of facts and conclusions which were adopted by the Appeals Council is lengthy. Certain phases of Billman's corporate and individual tax returns are gone into in considerable detail. Yet there are few things which can be pointed out as individually decisive factors in supporting the Referee's decision. While this is true, however, Billman's presentation of his claim did little to aid the Referee in clarifying a confused situation. In essence, the Referee and Appeals Council simply did not believe that Billman spent almost all of his time in Minneapolis without rendering substantial services to the corporations from which he purportedly resigned his active duties. Under all the facts, the Referee's conclusion and the conclusion of the Appeals Council is easily understood. In addition, the Referee took issue with certain losses which Billman claims to have incurred through self employment in some trade or business.

Some of the more persuasive factors upon which the Referee relied to support his decision are these:

1. In the minutes of the various family corporation meetings allotting Billman a pension for services rendered in the past, it was also noted that Billman would render such services as were necessary after his resignation when the active management of these corporations was being turned over to others. The minutes further recite that Billman would willingly do this as consideration for receiving pensions.

2. Billman claimed that he spent only about one-half of his time in Minneapolis. In this estimate he seems to have

erred. Although his wife was ill and resided in Arizona, and although a residence was maintained in Arizona, Billman actually spent about five-sixths of his time in Minneapolis residing at the mortuary. While living at the mortuary, he admittedly performed certain tasks which required his attention.

3. Billman retained the position of president in several corporations until June, 1955. He also served on the boards of directors of these corporations.

4. Billman claimed losses from self employment which could not be characterized as such. The major portion of these losses were not connected with a trade or business which Billman could rightfully claim he operated although the losses did arise in connection with corporations in which Billman had some interest. In any event, the Referee and Appeals Council found that most of the losses could not be set off against self employment income under 42 U.S.C.A. § 403(e) (4).

The Referee concluded that Billman (1) had rendered services for wages of more than $80 in each month of 1955; (2) was engaged in self employment in each month of 1955; (3) received wages and had net earnings from self employment in 1955 which were in excess of $3,600; and (4) incurred losses from self employment which were not in excess of $1,358.90. The Referee also regarded the actions of Billman's family corporations in granting pensions as mere sham devices in a plan to obtain social security benefits which were not lawfully owing.

As mentioned before, the duty of this Court is simply to determine whether or not the decision of the Appeals Council and Referee is supported by substantial evidence. The Court does not make its own findings of fact and draw inferences therefrom. As was stated in Thurston v. Hobby, D.C.W.D.Mo., 1955, 133 F.Supp. 205, 209–210,

"The decision of this Court depends upon whether the inference and conclusion reached by the Appeals Council is one which legally and logically might be concluded from the record made. Such determination of the Appeals Council will not be set aside by the courts if there is any legal basis therefor and the conclusion reached by the Appeals Council is a permissible one from facts in the record, even though upon a consideration of all the evidence this Court might have reached a different conclusion. It is axiomatic in a proceeding such as this, that we are not authorized to substitute our own for that of the administrative judgment. Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659. It must also be kept in mind that 'although we have here no dispute as to the evidentiary facts, that does not permit (this) court to substitute its judgment for that of the Appeals Council. Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301."

Moreover, Billman was saddled with the burden of proof before the Referee and the Appeals Council. 42 U.S.C.A. § 403(e) (3) (B) states,

"(B) For purposes of clause (D) of paragraph (2) * * *—

(i) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month *until it is shown to the satisfaction of the Secretary* that such individual rendered no substantial services in such month with respect to any trade or business the net income or loss of which is includible in computing (as provided in paragraph (4) of this subsection) his net earnings or net loss from self-employment for any taxable year * * *.

(ii) An individual will be presumed, with respect to any month, to have rendered services for wages (determined as provided in paragraph (4) of this subsection) of more than $80 *until it is shown to the satisfaction of the Secretary*

that such individual did not render such services in such month for more than such amount." (Emphasis supplied.)

Paragraph 5 of that same section states:

"(5) For purposes of this subsection, wages (determined as provided in paragraph (4) (C)) which, according to reports received by the Secretary, are paid to an individual during a taxable year shall be presumed to have been paid to him for services performed in such year *until it is shown to the satisfaction of the Secretary* that they were paid for services performed in another taxable year. If such reports with respect to an individual show his wages for a calendar year, such individual's taxable year shall be presumed to be a calendar year for purposes of this subsection *until it is shown to the satisfaction of the Secretary* that his taxable year is not a calendar year." (Emphasis supplied.)

The cases also recognize this burden. Thurston v. Hobby, supra, 133 F.Supp. at page 210; Norment v. Hobby, D.C.N. D.Ala., 1953, 124 F.Supp. 489, 491.

From a reading of the record, it is evident that Billman failed to demonstrate that he was entitled to the benefits claimed. He relied upon income tax returns which did little to show that he had actually retired. He relied upon an Internal Revenue Service audit which was not actually before the social security Referee and the Appeals Council. He relied upon bare corporate transactions and activities without any persuasive corroboration. If Billman's claim was proper, it is not demonstrated clearly in the record. He was advised by the Referee that it might be well to employ an experienced representative in presenting his claim. Although the benefits to be derived may not have warranted any great expenditure, the fact remains that Billman's own presentation of his claim failed to develop it to a point where it could be recognized by the Referee and the Appeals Council. Under these circumstances the Court has no choice but to affirm the administrative rulings.

It follows, therefore, that judgment will be entered in favor of the defendant. It is so ordered. An exception is reserved.