**CREAM WIPT FOOD PRODUCTS CO. v. FEDERAL SECURITY ADMINISTRATOR.**

No. 10330.

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1951.

Decided March 21, 1951.

Joseph G. Denny, Jr., Philadelphia, Pa., for petitioner.

John T. Grigsby, Washington, D. C. (James M. McInerney, Asst. Atty. Gen., Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., Frederick W. Becker, Attorney, Department of Justice, Lester R. Uretz, Attorney, Federal Security Agency, Washington, D. C., on the brief), for respondent.

Before KALODNER, STALEY, and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

We are concerned here with the propriety of an order of the Federal Security Administrator which establishes a standard of identity for salad dressing pursuant to Section 401 of the Federal Food, Drug and Cosmetic Act.[1] Petitioner seeks to have the order set aside because the standard does not include the option which it requested of using cream and milk in substitution for part of the water normally present in the starchy paste base of salad dressing. It claims that there was "no substantial evidence of record at the hearing" before the Administrator justifying this exclusion.

Section 401 of the Act provides:

"Whenever in the judgment of the Administrator such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container * * *.

"In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the Administrator shall, for the purpose of promoting honesty and fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label. * * *"

It is further provided in Section 701 (e) that: " * * * The Administrator shall base his order only on substantial evidence of record at the hearing and shall set forth as part of the order detailed findings of fact on which the order is based. * * *" Also applicable is the requirement of Section 7 (c) of the Administrative Procedure Act[2] that " * * * no

---

1. 52 Stat. 1046 (1938), 21 U.S.C.A. § 341.

2. 60 Stat. 237-244, 5 U.S.C.A. §§ 1001-1011.

sanction shall be imposed or rule or order * * * issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. * * *"

The scope of judicial review of the Administrator's orders in this court is defined both by Section 701(f) (3) of the Federal Food, Drug & Cosmetic Act and Section 10(e) of the Administrative Procedure Act. Section 701(f) (3) provides:

"The court shall have jurisdiction to affirm the order, or to set it aside in whole or in part, temporarily or permanently. If the order of the Administrator refuses to issue, amend, or repeal a regulation and such order is not in accordance with law the court shall by its judgment order the Administrator to take action, with respect to such regulation, in accordance with law. The findings of the Administrator as to the facts, if supported by substantial evidence, shall be conclusive."

Section 10(e) of the Administrative Procedure Act affirmatively provides for vacation of agency action which is unsupported by "substantial evidence" and adds that "in making the foregoing determinations the court shall review the whole record * * *."

█ The two statutes provide essentially the same scope for judicial review. Since the argument of this appeal, the Supreme Court has described the scope of judicial review under the provisions of the Administrative Procedure Act which are applicable to this case. It is the teaching and admonition of Universal Camera Corporation v. National Labor Relations Board, U.S., 71 S.Ct. 456, 465, (1) "that substantiality be determined in the light of all that the record relevantly presents", (2) that administrative findings must be set aside "when the record before a Court of Appeals clearly precludes the * * * [administrative] decision from being justified by a fair estimate of the worth of the testimony of witnesses or * * * [the agency's] informed judgment on matters within its special competence or both", and

(3) that "reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function".

Thus guided, we examine the record.

The order complained of defines salad dressing as an emulsified semi-solid food prepared from edible vegetable oils, certain acidifying ingredients and a cooked or partly cooked starchy paste prepared from certain flours, in the preparation of which starchy paste, water may be added. Petitioner sought to have included in the standard an alternative authorization to use cream, milk, milk solids, or non-fat dry milk solids as a substitute for part of the water.

For many years, petitioner had marketed a product so composed as a salad dressing under the name "Cream Wipt". It is not disputed that salad dressing containing water and small quantities of cream and milk is at least as nutritious and tasty as the product made with water alone. Beyond that, there was adequate basis for the Administrator's finding, made on conflicting evidence, that such small amounts of cream and milk as petitioner employed in its salad dressing do not substantially improve food value or taste of salad dressing.

The exclusion of milk and cream as optional ingredients was predicated and deemed reasonable solely on a finding of the Administrator that to permit their use "* * * would provide a basis for labeling and advertising claims as to the virtues of these ingredients in the abstract. A truthful statement on a label that cream, milk, or nonfat dry milk solids had been added as an ingredient of salad dressing would be misleading when applied to salad dressing containing only four percent of nonfat dry milk solids because it would not furnish the pertinent information that the small amounts added were insufficient to affect the taste and insignificant from a nutritional standpoint. Thus, to permit the dairy ingredients as optional for use in salad dressing would promote misleading labeling claims with no accompanying consumer benefits in terms of product improvement."

The only testimony of record which tended in any way to support the finding was that of Henry A. Lepper, a chemist, who was chief of the Dairy and Cereals Section of the Food Division of the Food and Drug Administration. Although he made the point several times, Lepper stated no more in substance than that a purchaser of salad dressing containing five percent or less milk or cream which was labeled as containing milk or cream without indicating the amount of milk or cream contained therein[3] would be misled even though the statement was truthful. No basis whatever was offered for this opinion.

Although Lepper was identified as "a government chemist with 37 years of experience in food law enforcement", nothing appears to show expertise in customer reactions to salad dressings or to the presence of cream or milk therein. It does not appear upon what basis the witness concluded, as his testimony necessarily implies, that consumers purchasing salad dressing are influenced substantially by notions of the relative nutritive values of competitive products. Certainly, common experience leaves reason for question—not answered in this record—whether consumers may not select these savory sauces as they do condiments rather than nutrients. Moreover, the record and findings indicate that rapidity of spoilage prevents the use of large quantities of cream or milk in commercial salad dressings. The question suggests itself and remains unanswered whether this characteristic is well known to householders and whether it serves to offset any assumption they might otherwise make that a salad dressing advertised as made with cream or milk contains these constituents in large quantities or is a superior product.

Thus, the unexplained opinion of Lepper provides very slight support for a conclusion that customers would give enough attention or attach such importance to the supposed effect of cream or milk truthfully advertised as a component of salad dressing to be misled as to the virtue of the product.

Whether this evidence would suffice to support a conclusion as to customer reaction where there existed no useful record of past performance in like or similar circumstances we need not decide. In some situations it may be necessary to rely upon opinions without demonstrated basis in experience. But here petitioner had marketed products in this field containing small quantities of cream and milk for some sixteen years. The very mixture in question has a commercial history. Whatever that record would reveal as to advertising and customer reaction, such evidence is obviously of so much greater probative value than one man's prediction of future customer reaction offered without stated basis as further to emphasize how scant is the basis of the critical findings of fact in this case. Considered alone, the evidence was of small probative value. In relation to the type of evidence reasonably anticipated in the circumstances of the case, that very slight proof must be characterized as unsubstantial.

Useful comparison may be made of Federal Security Administrator v. Quaker Oats Company, 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724, decided by the Supreme Court in 1943. There the Administrator's order promulgating a standard for farina and enriched farina was based on confusion allegedly suffered by consumers who desired to purchase vitamin-enriched food products from the presence of large numbers of variantly enriched products. Evidence of nutritionists was introduced that consumers generally lacked knowledge of the relative value of such ingredients and combinations of them. Similar testimony was also given by "representatives of consumer organizations which had made special studies of the problems of food standardization" who, in addition testified as to consumer confusion. The court squarely held that there was substantial evidence

---

3. It is conceded that under Section 401, if the substitution of milk or cream were permitted, the Administrator would be without authority to require that the percentage of milk or cream be included in advertisement of its presence.

to support the finding of consumer confusion. We are not laying a measuring rod. But the proof in the Quaker Oats case at least suggests how much more evidentiary basis findings in this field ordinarily have than was supplied here.

■ We have considered the whole record, the circumstances of the litigation, and the nature of the matter in controversy. In that context, we have exercised "the conventional judicial function" in an effort fairly to ascribe value to the testimony on the contested issue. Our conclusion is that the probative value of the testimony is insufficient to support the finding which depends upon it. It follows that the findings of the Administrator concerning the employment of cream, milk, and milk products in salad dressing will be set aside and the proceeding remanded to the Administrator for rehearing on this issue and reconsideration whether the optional ingredients proposed by petitioner should be allowed as alternative constituents in fixing standards of identity for salad dressing.