Clarence F. FORD

v.

Abraham A. RIBICOFF, Secretary of
Health, Education and Welfare.

Civ. No. 4184.

United States District Court
E. D. Tennessee, N. D.

Dec. 4, 1961.

John M. Armistead, Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action to review the final decision of the Secretary of Health, Education and Welfare under Section 205(g) of the Social Security Act as amended, 42 U.S.C.A. § 405(g).

Plaintiff seeks to reverse the decision of the Secretary which was rendered by the Appeals Council denying him payment of old age insurance benefits under the Social Security Act.

Plaintiff reached the retirement age of sixty-five in July, 1954 and was covered under the Social Security Act. In September, 1955, he filed application for benefits but due to excess annual earnings did not become eligible for benefits prior to January 1, 1959. On that date, his services as an employee of the Woodlawn Cemetery were, for all practical purposes, terminated because of physical disabilities and as a consequence his salary was reduced from $4,264.00 per year to $100.00 per month. In addition, he received $150.00 per month retirement pay from the company which was duly authorized by proper resolution of the Board of Directors.

Plaintiff, therefore, applied to the Social Security Administration in early 1959 for benefits. He asked that the benefits start as of January 1, 1959.

On February 13, 1959, the Bureau of Old Age and Survivors Insurance advised plaintiff that he was not entitled to Social Security benefits for the year 1959 for the reason that the $150.00 per month retirement pay granted to him by the corporation was includible as wages and disqualified him from receiving benefits since the inclusion of retirement benefits caused his wages to exceed $1,200.00 per year, that figure being the limit that a wage earner under seventy-two years of age could receive and be entitled Social Security benefits. This ruling was protested and a hearing was held before a Hearing Examiner on October 20, 1959 at which plaintiff testified.

The Hearing Examiner filed his decision on January 27, 1960 sustaining the claims of plaintiff that he was entitled to receive benefits beginning January 1, 1959, without deductions from wages earned.

The Appeals Council, of its own motion, reviewed the decision of the Examiner and reversed it by a decision rendered on November 25, 1960. The Appeals Council held that deductions should be imposed against plaintiff's monthly benefits beginning January, 1959 under Section 203 (b)(1) of the Social Security Act, 42 U. S.C.A. § 403(b) (1).

The question for decision by this Court is whether there is substantial evidence to support the decision of the Council that deductions should be imposed against plaintiff's monthly benefits for each month of 1959.

This Court had occasion to consider the meaning of the term "substantial evidence" in the recent case of Martin v. Ribicoff, 195 F.Supp. 761. In that case, it was stated in substance that it is such relevant evidence that will support a conclusion of a reasonable mind. See Consolidated Edison Company of New York v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126.

The Examiner, who observed and heard plaintiff testify, held that this compensation was not wages within the meaning of the Act while the Appeals Council held to the contrary.

The pertinent facts found by the Examiner are as follows:

"The main issue presented for determination by the hearing examiner is whether or not claimant's compensation designated by the company as $100 per month salary and $150 per month pension is in fact salary and pension as designated, or whether the $150 per month paid as a pension should be designated and deemed as salary and earnings. It is apparent that claimant has severely curtailed his activities by reason of his impaired vision. The impaired vision is shown to be extremely severe. It is apparent to the hearing examiner that claimant would be unable to seek employment with any other firm or business because of his impaired vision. It is also apparent that the services which claimant renders to the business are not significant and do not represent services of economic value to the company. If claimant no longer performed the services which he renders to the company, the company would suffer no great loss and would not employ anyone to replace him.

"Claimant's attorney has submitted a thorough and well prepared brief wherein he urges that it would be more realistic to consider the total amount paid to claimant of $250 per month, that is, the $150 retirement pension, plus $100 salary, as retirement benefits rather than as wages.

"The hearing examiner is inclined to accept this view of the compensation paid to claimant; however, the claimant is bound by the action of the board of directors in designating his salary at $100 per month and his retirement benefits as $150 per month.

"The hearing examiner finds that the services rendered to the corporation by the claimant are not reasonably worth in excess of the $100 per month paid him for these services and further finds that claimant has not received more than $100 per month as earnings within the meaning of the Social Security Act for any of the months commencing in January of 1959." Tr. 020, 021.

The evidentiary facts found by the Examiner were adopted and supplemented by the Appeals Council, but the inferences drawn by him from such facts and his ultimate findings and conclusions were not adopted by the Appeals Council.

■ Section 209 of the Act, 42 U.S. C.A. § 409, defines "wages" as remuneration for employment after 1950, but subsection (c) thereof states that the term "wages" shall not include "any payment made to an employee * * * on account of retirement". Thus, retirement pay is not wages under the specific wording of the Act.

If we interpret the decision of the Appeals Council correctly, the conclusion was reached that deductions should be imposed upon plaintiff's benefits beginning January, 1959 under Section 203(b) (1) of the Act because: (a) The $150.00, although designated by the Board of Directors of plaintiff's employer as retirement pay, was in fact pay for services rendered the company and (b) under Social Security ruling (S.R. No. 61–41–CCH UIR Vol. 1, Fed. para. 14,006) an employee who renders some services to an employer may not call part of his remuneration retirement pay and the other part wages.

■ The question of whether the $150.00 per month compensation was wages or retirement pay is a question of fact.

The Appeals Council found that the "overall evidence tends to establish continued services in the same job with perhaps fewer duties and responsibilities over a given period of time. The position as performed now is, in essence, the same as before with respect to the nature of the work performed, although less work may be done".

This finding conflicts with the resolution of the stockholders and directors of the employer which stated that "Mr. Fred Ford whose prior activities for the company constituted full time employment in sales and solicitation, has suffered for

some time from failing vision and due to his present age (69) and his physical incapacities, has been compelled to give up all paper work and confine his efforts on behalf of the company to meeting prospective purchasers or owners of cemetery lots who telephone or come to the office of the company". Tr. 063, 064.

The finding is also in conflict with the testimony of plaintiff before the Examiner that:

"A. Toward the last of last year —only the last of '58, I all but cut it out because I can't see to go.

"Q. Are you able to read the newspapers now? A. No, I haven't read the newspaper in over a year.

"Q. Can you get the telephone directory and look up phone numbers? A. Well, I can look up your number but it would take me fifteen or twenty minutes but I have got a headache when I get done because there is such a strain and I have this magnifying glass, of course, that I use and I couldn't see anything without it. Couldn't see your name in big print.

"Q. Was it your duty prior to the time of your retirement to actually sit in the office and run the office? A. No.

"Q. Other persons did that? A. Yes.

"Q. Now the services that you performed for the company you have already explained, and I can let you have this opportunity to add anything that you have already said if you wish about your present functions for the corporation. How much time do you spend at the office now? A. Well, I go down three to four mornings a week around 9:30 or 10:00 o'clock and I am never there later than 3:30 or 4:00, and sometimes to 4:00 but not often.

"Q. Is this a duplication of the sort of work that someone else formerly did for the company? A. Oh, no we never had any loafers out

there, John, before. I am the first loafer that ever went out there.

"Q. The office of a cemetery company is not an active office I take it? There is nothing to be done unless you have a funeral or someone comes to the cemetery? A. Well, to make the records that's all. It takes somebody maybe an hour or hour and a half a day on an average to get the records straightened out.

"Q. Are you able to do that sort of thing for the company? A. No, I am not.

"Q. Who is doing that? A. My brother.

"Q. Your brother is doing that? A. Yes, I have not made an entry on a book out there in any kind in any way shape or form in a year and a half." Tr. 045, 046.

The record shows clearly that there is no evidence to support the finding of the Council that the duties of plaintiff for the company after his retirement were substantially the same as they were before his retirement. His duties before his retirement consisted of outside work of making sales in a number of counties of East Tennessee which involved extensive traveling.

Dr. Parker found in 1954 that plaintiff's vision in his left eye was 20/200 and vision in his right eye was 10/400. His vision deteriorated with the passing of time and in 1959 he had to use a 60 power magnifying glass in order to do any reading at all. He was not able to drive an automobile except along familiar routes. There is no known medical treatment for his eyesight. Dr. Parker diagnosed his condition as "bilateral central scotoma due to the macular degeneration". In 1959, he was unable to travel over the counties of East Tennessee to sell cemetery lots on account of this condition.

There are four stockholders in the Woodlawn Cemetery company. Plaintiff continued to be a director and Vice President of the corporation after his retirement. He did not have the right to hire or fire employees. He had no authority

to sign checks, contracts, purchase supplies, supervise employees or make operational decisions for the corporation. He went to the office of the company at his own pleasure and assisted in minor matters more to occupy his mind than he did to serve the company.

■ We think that the record supports the finding of the Examiner that plaintiff's services to the company after retirement were insignificant and "of little economic value"—certainly not of a value in excess of $100.00 per month. If the entire amount of $250.00 had been designated by the directors as retirement pay, no question would have arisen about plaintiff's retirement status and the record supports the Examiner's finding that the entire amount of $250.00 per month paid by the company to plaintiff should have been considered retirement pay.

The observation is made in the decision of the Council that plaintiff did not receive the maximum amount of salary that could be credited under the Act until. after 1954 and that during the years 1957 and 1958 he was credited with maximum earnings although his vision continued to worsen during this period that "his salary increased from the inception of such condition until it attained the maximum figure creditable under the Act which continued during 1958 at the conclusion of which year it was decided that his services beginning in 1959 were worth only $100 a month while $150 was described as retirement pay".

■ The Act does not prohibit a wage earner from making honest efforts to obtain maximum benefits. Plaintiff worked as long as he could at the job for which he was fitted and the law does not penalize him for continuing to work in an effort to build up his Social Security benefits even though he worked in a physically handicapped condition. Rafal v. Flemming, 171 F.Supp. 490 (D.C.Va.1959); MacPherson v. Ewing, 107 F.Supp. 666 (D.C.).

The Council pointed out in its decision that plaintiff continued to be a director and Vice President of the company after he retired and that he continued to own 313 shares of stock in a company that had issued 1,000 shares. As such he did not perform any official duties. Corporate affairs were handled by the President and Secretary. The company had only four stockholders and six employees. The company was a small family corporation and the fact that plaintiff continued to serve as a director and Vice President of the company did not justify the conclusion of the Council that his duties and activities after retirement were substantially the same as they were before retirement.

The Council held in effect that the $150.00 per month was pay that was received by plaintiff for services that he continued to perform either "in whole or in part" in the position that he held before January 1, 1959. As pointed out hereinbefore, there is no evidence to support this finding.

The Council cited, in support of this finding or conclusion, the case of Berkley v. Folsom, a United States District Court case from Virginia, reported in CCH UIR, para. 8203, but not reported in the Federal Supplement.

The facts in that case were different from the facts in the present case. In that case, Berkley was the president of the company and as such had the responsibility of managing the company. She had the right to hire and fire personnel and acted as advisor and gave assistance to the new general manager of the business. She was on call by the company when needed. The Court held that these facts provided a substantial basis for the finding of the Referee that the so-called retirement pay constituted wages.

The case of Billman v. Folsum, 172 F. Supp. 388 (U.S.D.C. Minnesota, 1959) is also cited. In that case, plaintiff operated Billman Mortuary in Minneapolis for a number of years. There were two corporations, Billman & Affiliates, Inc. d/b/a the Joe Billman Mortuary. The Billman & Affiliates apparently operated the company, but the mortuary property

was owned by a separate corporation, the House of Flowers Mortuary, Inc. Billman acted as president and manager of both corporations. Billman also acted as president and manager of a family corporation which owned an apartment building at the address of the corporate name. In addition, he was the managing partner of Rose Management Company, a partnership which operated the apartment at 22 E. 22nd Street. He was chief stockholder and apparently president of Sherwood Apartments, Inc., which was a family corporation which owned and operated an apartment building. Billman held a major partnership interest in the Fuller Hotel. He owned other properties in Phoenix, Arizona with his wife, which were operated as Phoenix Enterprises.

Late in 1954, he decided to retire because of illness, having reached the age of 65. The management of the corporations was turned over to plaintiff's son, but plaintiff agreed to render any assistance necessary in the transition period as consideration for receiving adequate pensions. He retained the title of president in these corporations until June, 1955 when he resigned because the Social Security Board might possibly draw inferences against his social security interest. The corporations were indebted to plaintiff.

He notified the Social Security Board of his retirement, but was refused benefits. The Court, in affirming the Referee's decision, held that plaintiff had not actually retired as an employee of the corporations and that he had received income from his employment or salary in excess of that which he could receive without being disentitled to receive social security benefits, said in part:

"In essence, the Referee and Appeals Council simply did not believe that Billman spent almost all of his time in Minneapolis without rendering substantial services to the corporations from which he purportedly resigned his active duties. Under all the facts, the Referee's conclusion and the conclusion of the Appeals Council is easily understood."

The Court stated further:

"The Referee concluded that Billman (1) had rendered services for wages of more than $80 in each month of 1955; (2) was engaged in self employment in each month of 1955; (3) received wages and had net earnings from self employment in 1955 which were in excess of $3,600; and (4) incurred losses from self employment which were not in excess of $1,358.90. *The Referee also regarded the actions of Billman's family corporations in granting pensions as mere sham devices in a plan to obtain social security benefits which were not lawfully owing.* (Emphasis added.)

The record in this case shows that plaintiff and his employer acted in good faith in regard to plaintiff's retirement compensation and in all other matters pertaining to plaintiff's claim for Social Security benefits. There is nothing in the decision of the Appeals Council or in the record to indicate bad faith upon the part of plaintiff or his company.

The Billman decision does not support the decision of the Council in the present case.

Washburn v. Flemming, 189 F.Supp. 624 (D.C.,) is also cited. The facts in that case may be summarized as follows:

Washburn became president and treasurer of C. P. Washburn Company in 1920 and continued to hold these positions in 1958 and 1959; the corporation was a family corporation managed by the plaintiff, his three sons and one other person; and in 1958 and 1959 plaintiff was still employed by the corporation and went to his office daily and continued to participate substantially in the various activities of the corporation. He received a salary of $2,000.00 a year from the corporation before 1956. In 1956 and 1957, his salary was increased to $4,200.00 a year. He testified that beginning with 1958, the year when he became 65, his salary was reduced to $1,080.00 per year. His testimony as to when his salary was fixed

or by whom was vague. There was no formal action by the board of directors.

The Court found that there was substantial evidence to support the finding of the Referee that at least $2,080.00 of the $15,899.42 received by plaintiff from the corporation in 1958 was intended by the corporation to be compensation to plaintiff for services rendered by him in the year 1958.

The facts in Washburn are different from the facts in the case under consideration and the holding in that case does not support the holding of the Appeals Council in the present case.

This brings us to the second proposition relied upon by the Council to support its decision, namely, the ruling of the Social Security Administration made on August 29, 1961 and reported in CCH UIR, Vol. 1, Fed. para. 14,006. It is thus:

> "Where a worker employed for over 30 years by the same employer, under an arrangement with this employer, reduces the hours and lessens the responsibility of his work and receives from the employer a nonobligatory monthly annuity benefit (described as a 'retirement payment') in addition to his reduced wage, held, the annuity benefit payments made to the worker while he continues to perform services in employment are 'wages'; they are not such payments on account of retirement as are excluded from wages by section 209(b) and (c) of the Social Security Act."

The "Social Security Rulings" is published quarterly under the authority of the Commissioner of Social Security. It is stated in its preface that:

> " * * * Each ruling represents the application of the law to a particular set of facts. It would not be applicable where the facts are not the same as those stated in the rulings. In applying these rulings, the effect of subsequent legislation, regulations, court decisions, and rulings must also be considered. The rulings as published may be modified or superseded by subsequent rulings. * * * "

> " 'Social Security Rulings' is divided into three parts. Part I is comprised of interpretations and decisions of the Social Security Administration. Court decisions of particular significance may also be published in this section."

The ruling was made pursuant to the rule making power vested in the Secretary by 42 U.S.C.A. § 405(a).

This section vests in the Secretary the authority to make rules and regulations not inconsistent with the provisions of this subchapter necessary and appropriate to carry out the provisions and to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same.

In order for the rule or regulation to be valid, it must be consistent with the Act. The rule making power of the Commission goes no further than to prescribe the nature and amount of proofs and the method of taking and furnishing the same. There is nothing in the section about the weight to be given evidence. To prescribe a rule stating that retirement money paid an employee out of appreciation for past services rendered in a particular job is wages when the employee actually retires from such job and thereafter assumes a trivial or nominal position conflicts with the language in Section 209(c) of the Act defining wages. This language excludes as wages moneys paid on account of retirement. There is nothing in this language or in any other part of the Act that makes retirement benefits wages if the employee continues to do work for the company.

Hence, the ruling or regulation of the Administration is not within the framework of the Act and is contrary to the provisions of the Act.

The $150.00 monthly compensation was paid as retirement pay and was not wages under Section 209(c) of the Act, and the Secretary cannot make it so by ruling or regulation. Nierotko v. Social Security

Board, 327 U.S. 358, 66 S.Ct. 637, 90 L. Ed. 718.

The Act permitted plaintiff to draw $1,-200.00 per year without having deductions made from his Social Security benefits.

It must be kept in mind this was a ruling of an administrative agency rather than a regulation.

 A ruling that interprets the Act as applied to the facts in a particular case does not have the effect of law. Whereas, a regulation by an administrative agency within the framework but not in violation of the Act would have the effect of law. If the ruling is considered as the equivalent of a regulation, it would not be valid because it not only goes beyond the framework of the Act, but is in direct conflict with subsection (c) of Section 209 of the Act.

For the reasons indicated, plaintiff's motion for summary judgment is sustained and defendant's motion for summary judgment is denied.

Present order.