**Edwin Lanpheare SEWELL, Plaintiff,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 818 W.D.**

United States District Court
D. South Dakota, W. D.
April 10, 1963.

Whiting, Lynn, Freiberg & Shultz with Curtis D. Ireland acting, Rapid City, S. D., for plaintiff.

Harold C. Doyle, U. S. Atty., and Travis H. Lewin, Asst. U. S. Atty., Sioux Falls, S. D., for defendant.

BECK, District Judge.

This is an action under the Social Security Act, as amended, 42 U.S.C.A. for judicial review of a final decision of the Secretary, under which he pursuant to Section 404.955 [1] of the regulations under the Act reversed the "inferences, findings or conclusions of the Hearing Examiner" and held the plaintiff's old age benefits subject to deductions for November and December 1959 and for all of the months of 1960.

The only issue [2] in the case is whether or not the record reveals substantial evidence to sustain the decision that plaintiff's old age insurance benefits for the said months were subject to certain deductions.

It is within the court's power in such a case to enter a judgment affirming, modifying or reversing the decision with or without remanding the cause for a rehearing, 42 U.S.C.A. § 405(g) under rules that the scope of the review, is then limited to a determination "whether, upon review of the record as a whole, there is substantial evidence to support the findings of the Secretary". Cody v. Ribicoff, 8 Cir., 289 F.2d 394 (1961). "And", in the same case, citing Folsom v. O'Neal, 10 Cir., 250 F.2d 946 (1957), Carqueville v. Flemming, 7 Cir., 263 F.2d 875 (1959) and Gainey v. Flemming, 10 Cir., 279 F.2d 56 (1960), "the conclusive effect of findings of fact made by the secretary includes inferences from the evidence if there was substantial basis for them".

But in the application of those rules it is said in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, referred to in Cody:

"This Court read 'evidence' to mean 'substantial evidence,' Wash-

ington, V. & M. Coach Co. v. [National] Labor [Relations] Board, 301 U.S. 142 [57 S.Ct. 648, 81 L.Ed. 965], and we said that '[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. [National] Labor [Relations]. Board, 305 U. S. 197, 229 [59 S.Ct. 206, [217,] 83 L.Ed. 126]. Accordingly, it 'must do more than create a suspicion of the existence of the fact to be established. * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [National] Labor [Relations] Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, [505,] 83 L.Ed. 660].",

and from the same opinion: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.", and in Joki v. Flemming, D.C.Mont., 189 F.Supp. 365 (1960), that though the "findings of the Secretary as to any facts if supported by substantial evidence are made conclusive on the courts and a hearing de novo may not be had on the evidence. * * * it was never intended that the courts should abdicate their 'conventional judicial function' to review", citing Universal Camera, supra, and: "Where the administrative decision is based upon conclusions not reasonably reached upon due consideration of all the relevant issues presented * * * the court may properly correct the errors below. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776; Wilson v. Folsom, D.C.D.N.D.1957, 151 F.Supp. 195."

The reversal, according to certain conclusions arrived at by the Secretary, in the main, is predicated on singling out

**1.** This Section provides that the Appeals Council "on its own motion may review such determination and either affirm or reverse it".

**2.** This issue is being submitted for determination on the defendant's motion for a summary judgment.

the Schedule of Distribution and Income [3] in the corporation's income tax return for 1960, as a basis for a finding that the plaintiff thereby "is shown to have devoted 100% of his time to the business", and on conclusions [4] that a substantial portion of his share in the undistributed corporation profits credited to him in 1959 and 1960, available but not withdrawn, actually were wages for services he had rendered during those years.

True, there is more in that paragraph of the decision which refers to the Schedule, a reference to the plaintiff's statement on November 19, 1959, "that he expected to devote approximately 25 hours a week to the business" and another on July 14, 1960, "that he reduced his activities to two or three hours a day" and on that and the other information from the tax return a conclusion that, "The evidence is persuasive that the claimant is not a retired individual, within in the meaning of the Social Security Act".

None, independently considered, are impelling on the point of time given to the corporation and all spell no more than conflict. Equally vague is the "Percentage of Time Devoted to Business (a) 100". It could mean a 48 hour week, 40 hours, something less or 100% of the time decided on for the corporation. There are no suggestions that some of those items of testimony were false, none

3. "Name and Address of Each Shareholder.
(If return of shareholder is filed in another internal revenue district, specify district)

| | | 2. Stock Ownership | |
| | Number of Shares | Period Held | |
| | | From | To |
| (a) E. L. Sewell, Sr. Rapid City, S. Dak. | 146½ | 3–6–36 | 12–31–60 |
| (b) Pearl G. Sewell Rapid City, S. Dak. | 1 | 3–6–36 | 12–31–60 |
| (c) E. L. Sewell, Jr. Rapid City, S. Dak. | 20 | 1958 | 12–31–60 |
| (d) David Sewell Rapid City, S. Dak. | 20 | 1958 | 12–31–60 |
| Totals | xxx | xxx | xxx |

Continuation of Schedule of Distribution and Income

| 3. Percentage of Time Devoted to Business | 4. Compensation | 5. Dividends Date Amounts | 6. Share of Undistributed Taxable Income or Net Operating Loss |
| --- | --- | --- | --- |
| (a) 100 | 1200.00 | | 9394.47 |
| (b) -0- | | | 36.00 |
| (c) 100 | 7900.00 | | 1283.79 |
| (d) 100 | 6700.00 | | 1283.79 |
| Totals | | xxx xxx | 11,998.05" |

4. "Exclusive of his rental income, the claimant realized a total of $12,827.63 in 1959 and $10,594.47 in 1960. Although he may not have drawn the amounts designated as undistributed taxable income, they were credited to his account and were available to him. Consequently, the Appeals Council finds that his shares of the undistributed corporate profit accrued to the claimant in the years for which they were credited to his account. Thus we find that the claimant continued to work actively for the corporation and to receive substantial remuneration from the corporation during all of 1959 and 1960. Although some of the remuneration, in the form of undistributed corporate profit, may constitute a return on investment, the Appeals Council believes and so finds, that a substantial portion thereof was attributable to, and was intended as payment for, the services rendered by the claimant for the corporation."

to the effect that the arrangement as a whole was a scheme or device to obtain old-age insurance benefits, Flemming v. Lindgren, 9 Cir., 275 F.2d 596 (1960), none as to reasons why the "100" percentage reference was held compelling and no explanations why the others, i. e., those mentioned in the paragraph and others in the record bearing on the same point and the inference effect of the whole, were left aside. More to fill in, to reconcile, to explain or to correct, obviously was needed. Such evidence is in the transcript. It could have been used and relied on as inferences were arrived at and conclusions reached, but it wasn't.

That evidence is not in dispute. It shows that the plaintiff in the month he reached the age of 65 [5] made application for old-age benefits which in conjunction with an amendment thereto on November 19 of the same year, showed he had earned $320 each month through October of that year and $100 for each of the other two, accompanied by statements referred to in the decision as follows:

"I have been president of the Sewell & Tobin Company (El No. 46–0187750) Rapid City, South Dakota for many years. It is a close corporation with officerships held by two of my sons. Edwin L. Sewell, Jr. is Vice President and David G. Sewell is Secretary-Treasurer. My wife, Pearl, has not been an officer of the corporation. Maurice E. Tobin is manager of the firm but is not a corporate officer. The corporation is engaged in the business of retailing home furnishings."

"As president of the corporation I had maximum earnings under Social Security from 1937 through 1955. In 1956 I drew $2400 salary. In 1957 and 1958 my salary was $300 each month, or $3600 a year. Beginning in January 1959 and continuing through October I received $320 a month."

"Being aware of the fact that I could receive Social Security retirement benefits by holding my earnings to $100 a month, I arbitrarily established my salary at $100 a month, effective November 1, 1959, without consulting with the Board of Directors or holding a Board of Directors meeting. It is my intention to limit my salary at the $100 a month figure indefinitely."

"Up to November 1, 1959 I devoted approximately 40 hours a week to the business. Since that date I have been and expect to continue to devote approximately 25 hours a week to the business. I am not binding myself to any set hours of work and will work as I please. I may take vacation trips for several months at a time. Regardless of how much or little I work I intend to limit my salary to $100 a month as President of the corporation."

"The only income I expect to receive from the corporation other than my $100 a month salary is in the form of rent. Several years ago I constructed the building which houses the Sewell & Tobin Company. The building is owned by me personally and the corporation pays me rent. In 1958 the corporation paid me $8100 rental for the building and the rental for 1959 will be the same."

"It is possible that beginning in 1960 the rental will be increased to approximately $12,000 a year. I would like to continue to have the rent continued at the $675 a month figure to make it easier on the corporation but my accountant, S. S. Schouweiler, is practically insisting that the rental be increased to about $1000 a month to represent a fairer return on my investment. He is of the belief that the Internal Revenue Service will question the low rental paid by the corporation. I may, but am not definitely certain of it at this time, increase the rental beginning in 1960."

5. October, 1959.

There is also a showing of the plaintiff as owner of 146½ shares of the corporation's stock, his wife as owner of 1 and the remaining 40 divided equally between his two sons who were active in its operations and management and of his receiving $3,600 as wages and $1,887.91 as undistributed profits for 1958, in the next year and in the same order, $3,400 and $9,427.63 and $1,200 and $9,394.47 in 1960. Too, it is established, that there was a $3,840 increase in the rent he received from the corporation in 1960 and that the corporation in that year, as it had in the years before, followed the practice of not authorizing such changes before they were made, instead causing ratification thereof at annual meetings of the stockholders [6]. Moreover, there is a showing, not disputed, that the rent increase was reasonable [7]; that the corporation was and had been operated successfully for a long period of years and that its fiscal position warranted the distribution of profits and the increase in rent and all other changes to which reference has been made [8].

 The court under that record is compelled to reject the position asserted in the decision, that the plaintiff "continued to work actively for the corporation * * *" and the implied inference that the "100%" had reference to a full working period.

That item, seized on as a conclusion, was but a part of the evidence which related to time and as such explained by the plaintiff as he testified to 25 hours a week or as when he said, "if you want my honest opinion, I think that I possibly might work down there 2 hours a day", and as he placed it in the setting of surrendering of control of operations and management to his sons, of unwillingness to be bound by any working schedule and in his plans for retirement and long vacations. Universal Camera Corp. v. National Labor Relations Board, supra, Cream Wipt Food Products Co. v. Federal Security Administration, 3 Cir., 187 F.2d 789 (1951), Richardson v. Britton, 89 U.S.App.D.C. 391, 192 F.2d 423 (1951), United States v. Interstate Commerce Commission, 91 U.S.App.D.C. 178, 198 F.2d 958 (1952), National Labor Relations Board v. Pacific Intermountain Express Co., 8 Cir., 228 F.2d 170 (1955), cert. den. 351 U.S. 952, 76 S.Ct. 850, 100 L.Ed. 1476, Osceola County Co-operative Creamery Ass'n v. National Labor Relations Board, 8 Cir., 251 F.2d 62 (1958) and Heikes v. Fleming, D.C.Ill., 168 F.Supp. 675 (1958), aff. 7 Cir., 272 F.2d 137 (1959).

Neither is there substantial evidence to sustain the finding, "that the claimant continued * * * to receive substantial remuneration from the corporation during all of 1959 and 1960"., and

6. Excerpt from the minutes of the annual meeting of the stockholders of the corporation held in Rapid City, South Dakota, on April 1, 1958: "* * * Upon motion duly made and seconded, the stockholders ratified all of the acts and proceedings of the directors and officers since the last meeting." Like ratification is contained in the annual meeting of the stockholders on April 1, 1959, and at the following meeting on April 1, 1960.

7. Rent basis: cost to the plaintiff of the building leased to the corporation $100,-

410.17, cost of land $25,000, total $125,-410.17. Testimony by two Rapid City realtors as to rental value, $750 to $1,-000 per month by one and $800 to $1,-000 by the other. Testimony of the plaintiff: rent fair and just; it had nothing to do with his earnings from the corporation. Other proof, not disputed, shows a loss to the plaintiff on the building of $2,161.47 for 1959 after depreciation, interest, insurance and taxes, and with like deductions a loss of $3,803.33 in 1958 and in 1960 a profit of $327.66.

8. Calendar

| Year | Gross Receipts | Gross Profits | Net Profits |
|------|----------------|---------------|-------------|
| 1956 | $171,283.73 | $65,525.44 | $ 4,809.11 |
| 1957 | 167,453.87 | 62,028.15 | 90.05 |
| 1958 | 204,587.33 | 72,833.53 | 2,411.12 |
| 1959 | 276,253.94 | 98,424.65 | 12,040.39 |
| 1960 | 284,856.43 | 104,494.50 | 11,998.05 |

"Although some of the remuneration, in the form of undistributed corporate profits, may constitute a return on investment, the Appeals Council believes and so finds, that a substantial portion thereof was attributable to, and was intended as payment for, the services rendered by the claimant for the corporation"., and "that he earned more than $100 also in November and December 1959 and that deductions are imposable for those months".

The corporation's 1960 Return on Income (Form 1120–S), the plaintiff's and his wife's joint income tax return for the same year, the evidence as to the corporation's income for the years before and the record as a whole, *at least* is prima facie evidence, that he earned no more than $100 per month for each of the months under consideration and that the rental for the building leased to the corporation and his shares in the undistributed profits, were but bona fide returns on investments made over a long period of years, as to the one, real property, and as to the other, shares in the corporation. 42 U.S.C.A. § 209. See also the court's reference in Brannon v. Ribicoff, D.C.Mont., 200 F.Supp. 697 (1961), where it is said:

"The Appeals Council determined that Brannon's employment was not bona fide in that an employee-employer relationship as defined in section 210 of the Act, 42 U.S.C.A. § 410, and 20 CFR 404.1004(b) and (c), did not exist between him and the corporation. The Council found that the money received by Brannon from the corporation was in reality rentals from real estate, excluded from self-employment earnings by section 211(a) (1) of the Act, 42 U.S.C.A. § 411(a) (1), *and* did not constitute 'wages' as defined in section 209, 42 U.S.C.A. § 409." (Emphasis supplied).

For inferential deductions, see also 42 U.S.C.A. § 209 defining "wages" and Section 211(a) defining "net earnings from self-employment" and (1) thereunder that: "There shall be excluded rentals from real estate * * * ", and Section 411(a) (1), (2) and (3), relating to exclusion of all forms of income which spring from the mere passive ownership of property and are not created by work activity.

The finding that the reduction in salary to $100 was "arbitrarily established" by the plaintiff, under the record in its entirety, can not be held to be more than an expression of his motive for the arrangement or a part of his explanation of his plans to qualify under the Act, which absent any element of fraud or deceit may not be inquired into or questioned. MacPherson v. Ewing, D.C.Cal., 107 F.Supp. 666 (1952). In any event even though the lower salary may have been an act of his own as he had it established, it became the act of the corporation at the stockholders meeting in 1960.

The defendant's motion for summary judgment, accordingly, is denied, the Secretary's decision, be, and the same is hereby reversed and counsel for the plaintiff in accordance with this decision, which constitutes the court's findings of fact and conclusions of law, will prepare a judgment for approval and entry.