James R. WALKER and Nell M. Walker, Plaintiffs,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

No. KC–3160.

United States District Court, D. Kansas.

Nov. 10, 1971.

John D. Logsdon and Randolph G. Austin, Hackler, Anderson, Londerholm, Sperr & Vader, Olathe, Kan., for plaintiffs.

Robert J. Roth, U. S. Atty., Wichita, Kan., and James A. Pusateri, Asst. U. S. Atty., Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Chief Judge.

Plaintiffs, pursuant to the provisions of 42 U.S.C. § 405(g), seek judicial review of a final determination of defendant that they are not entitled to receive retirement insurance benefits under the Social Security Act. Defendant has moved for summary judgment, and the case is before us for decision in that posture. In accordance with statutory procedure, plaintiffs have been afforded a hearing before an examiner and have appealed to the Appeals Council. The determination of the hearing examiner, as affirmed by the Council, was that during a portion of 1967 and 1968, plaintiff husband was not "retired" within the requirements of the Act and that he earned income in excess of the amount permitted by the Act. Plaintiffs contend that they were not afforded a full and fair hearing by the examiner and that the evidence brought out at the hearing does not support the examiner's findings. Plaintiffs demand judgment against defendant for those benefits which defendant has withheld.

Having reviewed the briefs of the parties and the transcript of the hearing, we make the following findings and order based upon the records before us.

At the time of the hearing, December 10, 1969, plaintiffs were president and secretary, respectively, and majority stockholders of the Walker-Curtis Insurance Agency, Inc., of Kansas City, Missouri.

As president and majority stockholder of the agency, Mr. Walker was self-employed; Mrs. Walker, although she worked on an intermittent basis for the agency, was not a salaried employee until April, 1967, when she began receiving a salary of $125.00 per month. At the time of the hearing, the agency employed a Mrs. Ruffolo, who had been the office manager for 26 years. A Mr. Thornton was associated with the business, but not as an officer or shareholder, and apparently did not share in the profits of the business. In August, 1969, plaintiffs' son entered the business, with the intent of taking over for his father. For at least 10 years prior to the date of the hearing, these were

the only individuals involved in the agency.

The agency was incorporated in 1936, and thereafter functioned as a general agency for fire and casualty insurance. Over the years, it dealt directly with as many as 100 insurance brokers, writing the insurance solicited by the brokers, servicing the accounts, and making overrides on the accounts. For many years, a substantial part of the agency's income came from two large accounts, but the agency ceased to handle these accounts in 1967, which resulted in a decrease in the number of brokers served by the agency. Thus, in 1968, the agency served about 40 brokers; in 1969, about 20.

In addition to his insurance business, Mr. Walker owned and managed at least two apartment properties located in Kansas City, Missouri, and also two farm properties in Johnson County, Kansas. Over the years, he employed tenant farmers to take care of the farm properties, and some years, he used one of the farms as grazing land, buying cattle in the spring, and selling them in the fall. At the time of the hearing, one of the farm properties was in the soil bank and the other was vacant.

For many years, Mr. Walker was actively engaged in all these business interests, but sometime in the early 1960's, he began to develop problems with his health, and these, plus difficulties with tenants in the apartments and on one of the farms, caused him to devote less time to his business affairs. In 1967, he turned over the apartment properties to a rental agency and then subsequently sold one of them.

The decline in Mr. Walker's participation in his real estate interests was paralleled to a certain extent in his insurance agency. It is not entirely clear what caused this decline, but certainly failing health, increasing age, and a desire to begin to retire were all contributing factors.

In any event, his insurance business declined sufficiently so that he began devoting only three or four hours a day to its operation. He would come into the office about 11 o'clock and stay until 3 o'clock, tending to the needs of the agency, drinking coffee, and reading the newspaper. His business duties consisted mainly of making sure everything was running properly, ascertaining that the agents were paid on the correct day, and in general, "keeping the business together" so that his son could take it over.

On February 10, 1967, Walker filed for retirement and survivor's benefits, and on April 21, 1967, he was notified that he would be entitled to $178.10 per month, which included benefits for his wife, effective February, 1966. However, it was determined that he had earned over $125.00 per month in 1966 and 1967 through self-employment, and therefore that Social Security deductions would be continued and benefits would be withheld. On March 14, 1968, Walker filed a request for reconsideration, in which he stated that he had been earning less than the statutory maximum since his 65th birthday (May 20, 1967). He was notified on October 3, 1968, that the original determination had been deemed correct, and that deductions and withholding of benefits would continue for the remainder of 1968. On November 25, 1968, Walker indicated that he intended to request a hearing.

The record reflects considerable confusion existed with respect to Mr. Walker's application for benefits. Sometime between the time he first applied for benefits and the hearing, the Social Security Administration lost his file. This, plus a certain lack of communication and misunderstanding between Mr. Walker and the employees of the Kansas City, Kansas and Missouri, regional offices, was responsible for some of the delay which is evident on the record.

The hearing was held on December 10, 1969. The issues to be determined were set out by the examiner as follows:

"The general issue before the Hearing Examiner is whether work deduc-

tions were properly imposed against the social security retirement benefits of the claimant commencing February 1966 and continuing. The specific issue is whether or not the claimant has retired within the meaning of the Social Security Act, and whether his annual earnings exceeded the statutory amount allowed under the Social Security Act, as amended." [Hereafter, the examiner sets forth as the law applicable to the case 42 U.S.C. § 403(d) and § 403(f) (4).]

On January 19, 1970, the examiner found that Walker was "not retired" within the meaning of the Act and consequently that "work deductions" and withholding of benefits were proper up to and including the date of the decision. The examiner added that it appeared that Walker's son was taking over the business and that "the claimant may at some time be considered to have 'retired' within the meaning of the (Act) . . . However, it is not determined at this time that such is actually so." On February 19, 1970, Walker submitted a rebuttal to the Appeals Council, but on April 3, 1970, the Council, without comment, upheld the hearing examiner. Walker filed the present action on June 2, 1970.

■ Plaintiffs contend that they were not afforded a full and fair hearing before the examiner and support their contention with quotes from the hearing transcript which purport to show that the hearing examiner was biased. In addition, they cite the Court to cases in which hearing examiners were found by district courts to be biased and then they urge us to draw a parallel between the actions of the examiner in the cited cases with that of the examiner in this case. We cannot do so. In Hennig v. Gardner, 276 F.Supp. 622 (N.D.Texas, 1967) the claimant was a middle aged woman with a ninth grade education who was inept at presenting the medical evidence in support of her claim for disability benefits. The Court held that the examiner was not suffi-

ciently thorough in questioning the claimant about her physical condition, and that such a failure constituted an abuse of discretion. In Coyle v. Gardner, 298 F.Supp. 609 (D.Hawaii, 1969) the Court found a denial of due process where a hearing examiner "went through the motions of ostensibly informing the claimant . . . of his right to be represented by a lawyer or other qualified representative . . . [and then] subtly persuaded (the claimant) to proceed without any representation, even by his own wife." (p. 612) In this case, the claimant was again a ninth grade-educated construction worker who was obviously not prepared for presentation of his claim for disability insurance benefits.

In the instant case, Mr. Walker appeared before the examiner, as did Mrs. Walker and their son. The transcript of the hearing, including exhibits, is 146 pages long. The record discloses Mr. Walker received a "Notice of Hearing" and the important information concerning the Hearing. In addition, this was verbally explained to him by the examiner. Mr. Walker was able to understand the importance of the hearing. It is evident that he suffered from no disability which would affect his ability to present his case. While the examiner frequently asked leading questions of Mr. Walker and his witnesses, the record of the hearing read as a whole discloses that these questions on the examiner's part were intended to find the facts and not intended to elicit responses which would conform to any preconceived notion as to the propriety of plaintiffs' claim. In short, we find that plaintiffs were afforded a full and fair hearing before the examiner.

The other contentions of plaintiffs cannot, under present standards be sustained.

We are bound by the language of 42 U.S.C. § 405(g):

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

The question of what amounts to substantial evidence has been dealt with many times in this Circuit; one example is the recent case of Branch v. Finch, 313 F.Supp. 337 (D.Kan.1970) wherein Judge Templar stated:

"The Court pointed out in Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966), that findings of fact by the Secretary and the inferences drawn from such findings should not be disturbed by a reviewing court, 'if there is substantial evidence to support them. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." Stated in a different manner the evidence must be such, if the trial were to a jury, as would justify a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If there is only a slight preponderance of the evidence on one side or the other, the Secretary's finding should be affirmed." (p. 341)

■ Plaintiffs' second contention is that the evidence presented at the hearing is insufficient to support the examiner's conclusions that Mr. Walker was not "retired" within the meaning of the Act because he had not reduced his business activities, and in addition, that work deductions were properly imposed against Walker's social security retirement benefits because Walker had net earnings from self-employment in excess of the statutory limitation ($125.00 per month in years prior to 1968; $140.00 per month in 1968 and years thereafter).

The hearing examiner incorporated his findings into a section entitled "Discussion of the Evidence." With respect to Walker's participation in the business, he stated:

"The only question involved here is whether the claimant rendered substantial services in connection with self-employment income in all months of the years in question. It appears that the claimant has never spent a great amount of time in the office handling the business. However, the time that he has spent in the office in previous years had not been materially reduced in the years in question. The time that the claimant actually did spend in the business was in the form of a managerial function and contributed greatly to the success and profits of the organization . . . In other words, the claimant, even when his agency was receiving better financial returns from the insurance business, was not required to spend very much time in the office except for supervisory functions. The record does not show that anyone took over the work of the claimant in operating and supervising the insurance agency. The fact that the business fell off reduced to some extent the time it was necessary for him to spend in the office, but he was essentially the operator of the business and devoted whatever time was necessary to conduct the operation of the business."

Plaintiffs' position is that it is true that Walker never spent much time in his office; his primary work in earlier years was carried on out of the office, contacting prospective customers and inspecting insurable properties. The 'in-office' work was handled primarily by the secretary, Walker's participation being limited to that of an "overseer". They assert that it is his 'out-of-office' duties which diminished, and now that his duties are primarily limited to overseeing the work of the secretary.

It seems to us that the broader issue involved here is not merely how much time Walker spent in his office, but rather the overall extent of his contribution to the entirety of his business during the months in question. The record shows that although the volume of business done by Walker's agency declined prior to the months in question, Walker nevertheless maintained his position as president of the agency, and continued to make those 'executive' decisions necessary concerning whatever volume of

business the agency did. We agree that the hearing examiner's conclusion that Walker remained " . . . essentially the operator of the business and devoted whatever time was necessary to conduct the operation of the business," is supported by the evidence. We are mindful of the cases cited by plaintiffs in support of their position, but find them distinguishable from the facts of the case at bar. In Ford v. Ribicoff, 199 F.Supp. 822 (E.D.Tenn.1961) the Court found to be retired a man who, although retaining his position as director and vice-president of a small company,

" . . . did not have the right to hire or fire . . . had no authority to sign checks, contracts, purchase supplies, supervise employees or make operational decisions for the corporation. He went to the office of the company at his own pleasure and assisted in minor matters more to occupy his mind than he did to serve the company." (pp. 825–826)

In Sewell v. Celebrezze, 216 F.Supp. 192 (S.Dakota, 1963) the Court found to be retired an individual whose work in the business was characterized as a:

" . . . surrendering of control of the operations and management to his sons, of unwillingness to be bound by any working schedule and in his plans for retirement and long vacations." (p. 196)

As noted by the examiner, it appears that Walker began to turn over the agency to his son around August 15, 1969. However, it is clear that he retained the operational control of the agency up to that time.

We find that there is substantial evidence to support the examiner's decision regarding the question of Walker's retirement.

■ Plaintiffs also assert that there is insufficient evidence to support the examiner's finding that during the months in question, Walker's earnings from self-employment were in excess of the statutory maximum, and therefore that work deductions commenced in February, 1966, were properly imposed against his social security benefits.

The hearing examiner summarized his findings concerning Walker's earnings as follows:

"The record, as it is now constituted, shows that the claimant had wages and/or net earnings in excess of the statutory amounts allowed which would cause deductions for all months in question. The salary of $125.00 a month paid to the claimant's wife was obviously only for the purpose of obtaining payment of social security benefits, and according to the testimony of all parties, the claimant's wife did not work any more in 1967 and 1968 than she did in previous years. In fact, she testified she worked less. It is obvious that the wages paid to the claimant's wife were in actuality paid to him. It is further clear that the claimant's net income from the insurance agency was actually net income to him."

The record reflects that Mrs. Walker began receiving a salary of $125 per month beginning April, 1967, and further, that in addition to Mr. and Mrs. Walker's salaries of $125 per month during the months in question, the corporation had net income of $3,695 and $3,612 for the years 1967 and 68, respectively. Plaintiffs contend that the examiner's finding with respect to the salary paid to Mrs. Walker applies an improper legal standard. They cite Sewell v. Celebrezze, *supra*, to support their position.

*Sewell* is distinguishable from the facts in this case because the claimant's wife, though a stockholder in a small family corporation, did not receive a salary therefrom. *Sewell* does hold, however, that absent fraud or deceit, an individual may take arbitrary steps with respect to his salary for the express purpose of securing social security benefits. We find that there is no evidence of fraud or deceit in Walker's act of reducing his salary in 1967; however, this finding does not resolve the question of Mrs. Walker's salary.

Mrs. Walker's testimony is set out at pages 40 through 44 of the hearing transcript. She stated that she had worked off and on in the business for many years, and that in 1966, she worked about " . . . a day every other week . . . and then I usually came in and worked while our girl was on vacation, which was two weeks." (p. 41). This continued through 1967, but was halted in 1968 as the result of an eye operation undergone by Mrs. Walker. After the eye operation, Mrs. Walker stated she " . . . helped out some, but not quite as much there for a while, I didn't." (p. 42). She testified that she did mostly filing work, and while the secretary was on vacation, she would type policies. She added: "I haven't done anything with the books because, you know, I got completely away from that." (p. 42). From these and other facts, the hearing examiner reached his conclusion that the salary paid Mrs. Walker was actually paid to Mr. Walker.

The "shifting salary" question has recently been before us in the case of Koeller v. Finch, 315 F.Supp. 533 (D.Kan. 1970). We noted therein:

" 'The Secretary has, without question, the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality. The cases clearly demonstrate, as in Folsom v. O'Neal, 250 F.2d 946 (10th Cir.), where a person receiving a salary was not a bona fide employee the payment may be ignored for qualification purposes. Or in Poss v. Ribicoff, 289 F.2d 10 (2d Cir.), where here was a shifting of salary from husband to wife, and similarly in Flemming v. Lindgren, 275 F.2d 596 (9th Cir.); Newman v. Celebrezze, 310 F.2d 780 (2d Cir.) and Dondero v. Celebrezze, 312 F.2d 677 (2d Cir.). *However, there must be facts clearly developed in the record to support such reallocation of salary.'* [Emphasis supplied.] [Gardner v. Hall, 366 F.2d 132, 135, (10th Cir. 1966).]"

We conclude that under this record the trial examiner could properly conclude that Mrs. Walker was not a bona fide employee and that her salary was actually paid to Mr. Walker.

In summary, we find that plaintiffs received a fair hearing before the examiner and that the examiner's finding that Mr. Walker had not retired within the terms of the Act in that he continued to render "substantial services" to his agency is supported by substantial evidence. Accordingly, we find that work deductions in accordance with 42 U.S.C. § 403 were properly imposed against plaintiffs' social security benefits.

It is therefore ordered that defendant's motion for Summary Judgment be and is hereby Granted and plaintiffs' motion is Denied.